**Sidney Maybell SHAW,
et. al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**No. CIV.A.01–2642 RBW.**

United States District Court,
District of Columbia.

Nov. 22, 2002.

Ronald Lee Drake, Washington, DC, for Plaintiffs.

Melvin W. Bolden, Jr., Office of D.C. Corporation Counsel, Washington, DC, for Defendant.

### MEMORANDUM OPINION

WALTON, District Judge.

The instant lawsuit presents to the Court issues concerning the education of a young child enrolled in the District of Co-

lumbia Public Schools ("DCPS") system. Despite the allegations raised by the child and her parent, the Court concludes that DCPS has met its legal obligations to the child pursuant to the Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C. § 1400 *et seq.* (2000), and therefore must deny plaintiffs' motion for summary judgment.

### I. Background

Plaintiff Sidney Shaw is a four year old child with a speech and language impairment. Compl. ¶ 3. Plaintiff Antoinette Shaw is Sidney's mother. *Id.* ¶ 4. Currently, Sidney is enrolled at the J.O. Wilson Elementary School ("J.O.Wilson") in a program that provides her with 32 hours per week of special education. *Id.* ¶ 3. According to her Individualized Education Program ("IEP") Sidney is also receiving speech and language therapy sessions for thirty minutes two times a week.

Prior to attending J.O. Wilson, Sidney attended St. John's Early Intervention Program, where she received special education services and was enrolled in two day-care programs. Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Pls.' Reply") at 3–4. In approximately September 2000, Ms. Shaw[1] enrolled Sidney at J.O. Wilson.[2] At the time of Sidney's enrollment at J.O. Wilson, Ms. Shaw did not inform school officials that Sidney had been enrolled at St. John's Early Intervention Program nor that she had received special education services there. *Id.* at 4; Administrative Record ("Admin.R."), Ex. 1, Hearing Officer's Determination dated

---

1. References to "Ms. Shaw" are to plaintiff Antoinette Shaw.

2. It is not clear why Ms. Shaw moved Sidney from St. John's to J.O. Wilson, but the hearing officer's findings of fact state that Ms. Shaw enrolled Sidney in J.O. Wilson, which is not Sidney's neighborhood school, because Ms. Shaw's two other children attend school there. Administrative Record ("Admin.R."), Ex. 1, Hearing Officer's Determination dated November 20, 2001, at 3, Findings of Fact ¶ 3.

November 20, 2001, at 3, Findings of Fact ¶ 3. In November 2000, Ms. Shaw orally requested that Sidney be evaluated for special education services. Pls.' Reply at 4, Admin. R., Ex. 1 at 3, Findings of Fact ¶ 4. On March 7, 2001, Sidney's regular education classroom teacher, Ms. Pickett, made a referral for an evaluation of Sidney. *Id.* Ms. Shaw subsequently made another oral request for an evaluation in April 2001. *Id.*

On July 17, 2001, Marsha Hosten–Carter, M.Ed., performed a psycho-educational evaluation of Sidney from which she observed that "[c]urrent testing demonstrated the presence of Mentally Deficient intellectual functioning" and "Sidney's low cognitive scores and academic performance are likely impacted by delayed language skills, and are likely to be an underestimate of her true abilities. . . . Results of a formal speech/language evaluation are deemed necessary prior to making a recommendation for an appropriate setting." Admin. Rec., Ex. SS–1, Confidential Psychoeducational Report, dated July 27, 2001, at 3. A speech and language evaluation was performed on Sidney on July 31, 2001, by Toni Carroll, M.S., who concluded that although Sidney "has mastered the skills that are precursors to language" she currently has "a moderate expressive communication and auditory comprehension delay." Admin. R., Ex. SS–2, Speech and Language Evaluation Report at 4. Based upon these findings, Ms. Carroll recommended that "Sidney receive speech and language intervention two times weekly for 30 minutes." *Id.*

A Building Level Multidisciplinary Team ("BLMDT") met on August 2, 2001, to conduct an IEP meeting on Sidney's behalf, at which time it was determined that Sidney was eligible for special education based upon having a speech and language disorder. Admin. R., Ex. 1 at 4, Findings of Fact ¶ 8. At this meeting an IEP was developed and a special education placement for Sidney was offered in a "95% program at J.O. Wilson Elementary School, the same school where Sidney was currently enrolled." *Id.* Ms. Shaw was present during the meeting, asked questions, and accepted this placement. *Id.* However, Ms. Shaw was distressed by the finding that Sidney's IQ fell in the mentally deficient range. *Id.* A 30–day review was recommended by the meeting participants. *Id.* ¶ 11. Ms. Vincent, the IEP Coordinator, invited Ms. Shaw on several occasions to participate in the BLMDT review meeting that was scheduled, but Ms. Shaw declined these offers based on scheduling issues. *Id.*[3]

Subsequent to the initial BLMDT meeting, in September 2001, Sidney was enrolled in the 95% special education program at J.O. Wilson. *Id.* ¶ 12. The special education class has six students, ages 4–6, two of whom are girls, and four of whom are boys. *Id.* These other students are identified "as multiply disabled, speech/language impaired, and emotionally disturbed." *Id.* Present in the classroom are a full-time teacher, a full-time teacher's aid, and a librarian. *Id.*[4]

---

**3.** At the initial BLMDT meeting, DCPS intended to review Sidney's occupational therapy ("OT") evaluation that had been conducted prior to the initial BLMDT meeting and to have Ms. Shaw administered a Vineland test. Admin. R., Ex. 1 at 4, Findings of Fact ¶ 11.

**4.** There is an indication in the hearing officer's report that a substitute teacher told Ms.

Shaw that one of the boys in Sidney's class had fondled himself and that another had exposed himself. Admin. R., Ex. 1 at 4, Findings of Fact ¶ 13. However, plaintiffs have not alleged that this fact is the basis for their assertion that placement at J.O. Wilson is inappropriate.

Ms. Shaw filed a request for a due process hearing pursuant to 20 U.S.C. § 1415(f)(1) on September 20, 2001. The request for the hearing was titled "Request for Appropriateness and Failure to Provide a Free Appropriate Education Hearing" ("Request"). The due process hearing was held on November 20, 2001. In the Request, plaintiffs contended, among other things, that DCPS failed to assess and evaluate Sidney in all areas of suspected disability; that the "current IEP and/or Notice of Proposed Change in Educational Placement (NOPP) fail to meet legal requirements"; and that "placement at J.O. Wilson Elementary School is not an appropriate program and/or placement for the child." Admin. R., Ex. 5 ¶¶ 12–15. Despite the numerous issues raised in plaintiffs' Request, at the hearing the hearing officer addressed only two issues:[5] "(1) Did DCPS violate Ms. Shaw's due process rights by failing to identify her daughter, Sidney Shaw, as eligible for special education services in a timely manner? (2) Did DCPS deny Sidney FAPE [Free Appropriate Public Education] by putting her in an inappropriate special education placement?" Admin. R., Ex. 1 at 2.

Based upon the facts presented to her, the hearing officer made the following conclusions of law:

(1) Although DCPS surpassed the time line for offering special education services to Sidney, there was no harm to the child as the time line ran into the summer months.

(2) DCPS did not err in the application of various evaluation instruments to determine Sidney's eligibility and need for special education services.[6]

(3) Although the notice of placement issued by DCPS did not totally meet the letter of the law, the parent was provided with all information to be contained therein. Therefore, no violation is found.

(4) DCPS is providing Sidney with FAPE at J.O. Wilson Elementary School.

Admin. R., Ex. 1 at 5–6, Conclusions of Law.

## II. *The Parties' Arguments*

Plaintiffs assert that the hearing officer erred in several respects: First, she erred in ruling as a matter of law that although DCPS surpassed the time for offering Sidney special education services, there was no harm caused by the delay because the violation occurred only while the school system was in summer recess. Compl. ¶ 26. Second, the hearing officer erred by ruling as a matter of law that although DCPS' notice of placement did not literally comply with the requirements of the law, there was no violation because Ms. Shaw was provided with all the information regarding Sidney's placement. *Id.* ¶ 28. Third, the hearing officer erred in concluding that DCPS is providing Sidney with a Free Appropriate Public Education ("FAPE") at J.O. Wilson Elementary School. *Id.* ¶ 30. Finally, the hearing officer erred in denying Ms. Shaw's request for an alternative special educational placement and tutorial services for Sidney. *Id.* ¶ 32.

Plaintiffs also make allegations of error on the part of DCPS. First, plaintiffs' allege that DCPS provided false testimony to the hearing officer regarding the fact that Ms. Hosten–Carter attended the ini-

---

**5.** Plaintiffs do not challenge the hearing officer's failure to address the other issues they raised in their Request.

**6.** Plaintiffs have not challenged this specific finding made by the hearing officer.

tial BLMDT meeting in order to conceal the fact that it illegally altered the IEP to reflect that Ms. Hosten–Carter signed the IEP at the meeting. *Id.* ¶ 35. Second, DCPS failed to prove that its representative at the initial BLMDT meeting was qualified pursuant to 34 C.F.R. § 300.344 to attend that meeting. *Id.* ¶¶ 18, 37. Finally, plaintiffs allege that the "Perelman memorandum" issued by DCPS, which provides that when negotiating the terms of a settlement at the administrative level attorneys who represent children must also negotiate their fees, constitutes a denial of plaintiffs' due process rights because it required their attorney to negotiate a settlement that would be in the best interest of the minor plaintiff while simultaneously negotiating his personal right to recover attorney's fees for the same services he was providing to the minor plaintiff. *Id.* ¶ 39.[7]

Plaintiffs seek a ruling from this Court that DCPS failed to satisfy its burden of proof at the hearing before the hearing officer to establish that the DCPS representative was qualified to be present at the initial BLMDT meeting; that the August 2, 2001, IEP and notice of placement did not meet the requirements of the IDEA; that the Perelman Memorandum denied plaintiffs due process; that DCPS immediately place Sidney at a school of Ms. Shaw's choice and fund Sidney's attendance there; that DCPS immediately provide Sidney with one hour of paid, private tutorial services, with a tutor of Ms. Shaw's selection, for every day past the 120 day period after Ms. Shaw made her request to DCPS for an evaluation; and

that the Court award plaintiff attorney's fees, expert witness fees and costs for both the administrative proceeding and the current judicial proceeding.

In opposition to plaintiffs' motion, defendant District of Columbia[8] raises several arguments. First, DCPS argues that the hearing officer's decision is supported by substantial evidence in the record and there is no allegation that the evaluative reports or IEP regarding Sidney are substantively deficient. Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, Remand, and Injunctive Relief ("Defs.' Opp'n") at 6. In this regard, DCPS notes that Ms. Shaw "attended the [initial BLMDT] meeting, participated in [the IEP's] development, and agreed with its contents." *Id.* at 6–7. Next, DCPS argues that any procedural flaws in evaluating and placing Sidney past the 120–day time-line, in the notice of placement and in the alleged altering of the IEP to include Ms. Hosten–Carter's signature do not "render the IEP or placement invalid" and have not "compromised [Sidney's] right to an appropriate education, seriously hampered [Ms. Shaw's] opportunity to participate in the formulation process or caused a deprivation of educational benefit." *Id.* at 7–8 (internal quotation marks and citations omitted). DCPS argues there has not been a violation of the IDEA in this case because Sidney was not denied special education, Ms. Shaw was provided with all the information that needed to be contained in the notice of placement, and even if Ms. Hosten–Carter did not attend the initial BLMDT meeting, which disputes

---

**7.** This issue was raised in plaintiffs' Request for a hearing; however, it was not addressed in the hearing officer's decision.

**8.** References to the defendant District of Columbia shall be made as "DCPS." *See In Re C.S.*, 804 A.2d 307, 310 (D.C.2002) ("The IDEA is administered in the District of Co-

lumbia by the District of Columbia Public School System (DCPS). DCPS is ultimately responsible for ensuring that all children with disabilities in the District of Columbia 'receive a free appropriate education in accordance with the IDEA.'") (citations omitted).

the recollection of the IEP coordinator, there is no substantive error because Ms. Hosten–Carter's extensive report was available at the meeting and the results were explained to Ms. Shaw and utilized by the Multi–Disciplinary Team ("MDT"). *Id.* at 9. Finally, regarding the Perelman Memorandum, DCPS argues that this issue was not raised at the administrative hearing regarding this matter; that plaintiffs do not address the standard for the injunctive relief they seek; and that plaintiffs lack standing to challenge the Perelman memorandum in this Court "because they have not alleged that the challenged action caused them injury or that they are in danger of sustaining some direct injury." *Id.* at 2.

The Court will address each of the parties' arguments in turn.

### III. *Analysis*

#### 1. *Standard of Review*

 The IDEA guarantees to children the right to a free individually appropriate public education. 20 U.S.C. § 1400(d)(1)(A). A free individually appropriate public education "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *See Board of Educ. Hendrick Hudson Central Sch. Dist. v. Rowley,* 458 U.S. 176, 188–89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). When reviewing an administrative determination made pursuant to 20 U.S.C. § 1415(f), the Court must engage in a two-step process. First, it must determine whether DCPS has complied with the procedural requirements of the IDEA. *Id.* at 206, 102 S.Ct. 3034. Second, it must determine whether the "individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits[.]"

*Id.* at 207, 102 S.Ct. 3034. Once a determination is made that "these requirements are met,. [the Court must conclude that] the State has complied with the obligations imposed by Congress and the courts can require no more." *Id.* Courts have interpreted the Act's requirement that a reviewing court in an IDEA case "shall receive the records of the administrative proceedings[,]" 20 U.S.C. § 1415(i)(2)(B)(i), as requiring courts to give "due weight" to the administrative proceedings. *Id.* at 206, 102 S.Ct. 3034; *Leonard v. McKenzie,* 869 F.2d 1558, 1561 (D.C.Cir.1989); *Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C.Cir.1988). However, the Court is also free to consider additional evidence at the request of a party, 20 U.S.C. § 1415(i)(2)(B)(ii), thus indicating that although it must give deference to the finding of the hearing officer, "less deference than is conventional" is required. *Kerkam,* 862 F.2d at 887. But, "a party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong ..." *Id.* In making a final determination on this question, the Court must "bas[e] its decision on the preponderance of the evidence [and] shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii). And, the Court must remain mindful that "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the court[ ] to substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Rowley,* 458 U.S. at 206, 102 S.Ct. 3034.

In reviewing plaintiffs' motion for summary judgment, the Court must determine whether there exists "no genuine issue as to any material fact and ... [whether] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Court may only grant summary judgment to the movant if both questions can be answered in the affirmative. *Id.* The Court must also review the facts in the light most favorable to defendant as the non-moving party in making this determination. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This requires an evaluation of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ..." that are in the record presented to the Court. Fed.R.Civ.P. 56(c). Once a motion for summary judgment has been properly made and supported by evidence, the non-moving party must then demonstrate the existence of a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing Fed.R.Civ.P. 56(e)). However, the existence of *"some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505. Summary judgment is mandated if a plaintiff fails to establish an element essential to that party's case and on which that party will have the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

#### 2. *The Hearing Officer's Determinations*

■ As indicated, the Court must first decide whether DCPS complied with the Act's procedural regulations. In this regard, plaintiffs challenge the hearing officer's finding that "[a]lthough DCPS surpassed the time line for offering special education services to Sidney, there was no harm to the child as the time line ran into the summer months." Admin. R., Ex. 1 at 5, Conclusions of Law. The hearing officer acknowledged that pursuant to District of Columbia law, DCPS must determine whether a child is eligible for special education, and if so, develop an IEP and offer an appropriate educational placement within 120 days. *Id.* The hearing officer noted that the eligibility for special education referral form in this matter was filed on March 7, 2001, and DCPS did not complete the process until August 2, 2001; even though the 120 day time-line for its completion ended on July 5, 2001. *Id.* In concluding that this procedural flaw did not violate the IDEA, the hearing officer reasoned that because "the time line ran over the summer by a mere month and as Sidney's IEP does not indicate that she is eligible for extended school year (ESY) services, [, *i.e.,* services when school was not scheduled to be in session[9]] it cannot be assumed that DCPS denied Sidney special education services." *Id.* Plaintiffs argue that this finding was incorrect. The Court disagrees.

■ "It is clear that, under the IDEA, the failure of a school district to have a final IEP in place at the beginning of the school year is a procedural defect." *MM v. School Dist. of Greenville County,* 303 F.3d 523, 533 (4th Cir.2002). However, in this case, plaintiffs do not contend that an IEP was not in place when Sidney began the 2001–2002 academic year. They merely argue that an IEP had not been developed and an educational placement select-

9. Extended school year services are defined as services "provided to a child with a disability ... [b]eyond the normal school year of the public agency ...[i]n accordance with the child's IEP ..." 34 C.F.R. § 300.309(b)(1)(i) & (ii).

ed prior to the expiration of the 120 day time-line. Since the end of that time-line ran into the summer months, and Sidney's IEP does not mandate that she receive Extended School year Services ("ESY"), there was no denial of a free appropriate education to Sidney. *See id.* at 534 ("If a disabled child received (or was offered) a FAPE in spite of a technical violation of the IDEA, the school district has fulfilled its statutory obligations.") (citation omitted). *See also McAdoo v. McKenzie*, No. CIV.A.86–922, 1988 WL 9592, at * 7 (D.D.C. Jan. 28, 1988) (holding that rescheduling of due process hearing to a date that fell outside the statutory time frame did not violate plaintiffs' rights under the IDEA since the student had already been placed at a school of his parents' choosing at the beginning of the school year and this placement was not affected in any way by the hearing officer's rescheduling of the due process hearing. "[T]he procedural delays … did not prejudice plaintiffs' interest in assuring an appropriate special education for their son."). Here, there was no time when Sidney was denied the free appropriate education she was entitled to after the expiration of the 120–day period.

Plaintiffs nonetheless argue that the hearing officer's determination violated 34 C.F.R. § 300.309, which provides for ESY services. *See* Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment, Remand, and Injunctive Relief ("Pls.' Mem.") at 6. However, plaintiffs neglected to quote that part of the regulation that states that "[e]xtended school year services must be provided *only* if a child's IEP team determines, on an individual basis … [,] that the services are necessary for the provision of FAPE to the child." 34 C.F.R. § 300.309(a)(2). There is no provision in Sidney's IEP for ESY services. Nor do plaintiffs contend that such services were

requested. Therefore, the Court concludes that DCPS' delay in formulating Sidney's IEP and determining her placement did not violate her rights to a free appropriate education and therefore the decision of the hearing officer was not erroneous on this point. *See MM*, 303 F.3d at 534–35 (holding that the proposed IEP offered to child but not completed and signed as procedurally required by the IDEA due to parents' lack of cooperation "did not result in any lost educational opportunity for [the child] … [and therefore] did not contravene the IDEA[,]" where the hearing officer and district court found that the school system "was willing to offer [the child] a FAPE, and … had attempted to do so.").

■ Next, plaintiffs challenge the hearing officer's determination that although the notice of placement given by DCPS was not completely in accord with the Act's requirements, there was no violation because Ms. Shaw was provided with all the information required to be contained in the notice. 34 C.F.R. §§ 300.503 and 300.504 contains the requirements a notice to parents of children with educational disabilities must contain. Section 300.504 states that the parent must receive "[a] copy of the procedural safeguards available to parents of a child with a disability … upon initial referral for evaluation [and][u]pon each notification of an IEP meeting …" Pursuant to § 300.503, prior to the time when DCPS "proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE …," the agency must provide the parent with notice that provides:

(1) A description of the action proposed or refused by the agency;

(2) A description of why the agency proposes or refuses to take the action;

(3) A description of any other options that the agency considered and the reasons why those options were rejected;

(4) A description of each evaluation procedure, test, record, or report the agency used as a basis for the proposed or refused action;

(5) A description of any other factors that are relevant to the agency's proposal or refusal;

(6) A statement that the parents of a child with a disability have protection under the procedural safeguards of this part and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained; and

(7) Sources for parents to contact to obtain assistance in understanding the provisions of this part.

DCPS' contention before the hearing officer was that its notice to Ms. Shaw consisted of a document signed by Ms. Shaw on August 2, 2001, entitled "Initial Placement" and a second document entitled "Multidisciplinary Team (MDT) Prior Notice." The Initial Placement document asserts that Ms. Shaw had already been provided with a copy of her procedural rights and reminded her that her consent to Sidney's placement was voluntary and could be rescinded at any time. Admin. R., Ex. 4, DPCS–01. The Initial Placement also stated that Sidney would be placed at J.O. Wilson Elementary School and is signed by Ms. Shaw indicating that DCPS could proceed with the placement. *Id.* The second document, the MDT Prior Notice, informed Ms. Shaw that Sidney was entitled to receive special education services as a child with a speech language impairment and that she would be receiving speech related services. Admin. R., Ex. 4, DCPS–05. It also states that Sidney would be placed in a "Level C pro-

gram for students with a SLI disability [and that this program] will address defects on the IEP." *Id.* The hearing officer concluded that these documents "provide a description of the action proposed and the reason for the action—two of the Federal requirements." Admin. R., Ex. 1 at 5. In addition, the hearing officer concluded that although federal regulations also require a description of any other options considered by the agency and DCPS did not list any other options, that this deficiency "is not a violation if [DCPS] did not consider other options." *Id.* The hearing officer also found that although the notice was required to include a "listing of evaluation procedures, tests, records and reports that the agency used in making [DCPS'] decision[,]" and these were not listed in the notice Ms. Shaw received, that there was no violation because these items "were reviewed with the parent at the time of the [initial] BLMDT meeting." *Id.* Finally, the hearing officer found that Ms. Shaw received notice of her due process rights at the initial BLMDT meeting. *Id.*

■ "The regulations governing the contents of the DCPS' notice must be interpreted in the context of the IDEA's procedural protections, particularly the right to a due process hearing . . . [,] [which is] the Act's primary procedural protection for parents." *Kroot v. District of Columbia,* 800 F.Supp. 976, 982 (D.D.C. 1992). In *Kroot,* a hearing officer had determined that DCPS' notice regarding a child's ineligibility for special education, wherein DCPS noted that the child had "experienced several weaknesses" but concluded "that there was not a severe discrepancy between [the child's] achievement and intellectual functioning" and included a list of "recommended actions other than special education and a list of all the tests and reports that the MDT considered[,]" was insufficient under the IDEA. *Id.* In

reversing the hearing officer's determination, the court noted that "[t]he purpose of the notice is to provide sufficient information to protect the parents' rights under the Act" and to "enable ... parents to make an informed decision whether to challenge the DCPS' determination and to prepare for meaningful participation in a due process hearing on their challenge." *Id.* In light of these goals, the *Kroot* court held that DCPS' notice was adequate. *Id.* The court also noted that the plaintiffs raised an argument regarding the fact that they did not receive an amendment that was made to the MDT report, which added interpretations of test results "that were inadvertently omitted from the original report[,]" until five days prior to the hearing. *Id.* at 983. The court held that this "delayed notice of the amendment did not prejudice plaintiffs' rights under the Act[,]" as they had "an adequate opportunity to consider the added information before the hearing, and earlier notice would not have furthered any of plaintiffs' rights under the Act." *Id.; see also Leonard,* 869 F.2d at 1562 n. 3 (holding that erroneous notice of placement sent by DCPS to parents that incorrectly identified child's placement did not prejudice the parents as a corrective notice was issued a month later. "In short, we see no reason to overturn the hearing officer's placement decision on the basis of an administrative foul-up that neither violated the Act's procedural requirements nor affected [the parents] in any appreciable way."); *McAdoo,* 1988 WL 9592, at *7–8 (holding that DCPS' notice that "did not contain the required written description of the proposed program" did not prejudice the student's parents where "they had ample opportunity prior to the beginning of the ... school year to determine the appropriateness of the program[,]" and where the record showed that "[e]ven if the notice had contained a written description of the

... program, plaintiffs more than likely would have still challenged the proposed placement" because they had decided unilaterally to place their child in a private school.).

The Court concludes that the notice received in this case did not compromise any of the parent's rights under the IDEA. Indeed, the parent promptly filed her request for a due process hearing and was represented by able counsel at that hearing. Further, the parent's exhibits that were submitted at the due process hearing included the July 2001 psycho-educational and speech/language evaluation reports, the IEP and the notice of Initial Placement, thus indicating that she received these items in time to prepare for the hearing and to present them at the due process hearing. As the notice in no way affected plaintiffs' "primary procedural protection[,]" *Kroot,* 800 F.Supp. at 982, the Court concludes that the notice provided to Ms. Shaw did not violate her rights under the IDEA. *Cf. Smith v. Henson,* 786 F.Supp. 43, 45–46 (D.D.C.1992) (holding that notices sent by DCPS to parents, in which a 15–day time limit was imposed regarding the parents' rights to request a due process hearing, when in fact the IDEA contains no such time limit, "violated [the parents'] due process rights under the IDEA." "A misleading notice of that kind violates the procedural right afforded by the IDEA regardless of any actual prejudice.").

■ Having determined that the foregoing procedural irregularities did not prejudice Sidney, the Court must determine whether the IEP that was developed and the placement resulting therefrom are "reasonably calculated to enable [Sidney] to receive educational benefits[.]" *Rowley,* 458 U.S. at 207, 102 S.Ct. 3034. The hearing officer concluded that Sidney is being

provided with FAPE at J.O. Wilson. On this finding, she noted that:

> Mr. Drake [,plaintiffs' counsel,] offered no evidence to support the notion that Sidney's current IEP and special education placement cannot meet her needs. No testimony of any kind by either party was offered on the substance of the IEP. The class at J.O. Wilson is small, noncategorical, has a good teacher-to-student ratio, provides her with all needed related services, is staffed by certified personnel, offers mainstreaming for lunch and recess, and is in the school where Ms. Shaw's other children attend. The allegation of inappropriate sexual behavior by other students was unsupported by direct evidence.

Admin. R., Ex. 1 at 6.

Aside from the unsubstantiated sexual behavior allegations, plaintiffs offer nothing to rebut the hearing officer's determination that J.O. Wilson is an appropriate placement for Sidney. Indeed, the most glaring deficiency in plaintiffs' pleadings is their lack of explanation regarding exactly *why* placement at the J.O. Wilson Elementary School constitutes a denial of a free appropriate public education to Sidney.

■ The Supreme Court has held that a state fulfills its obligation to provide a free appropriate public education to a handicapped child "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *See Rowley*, 458 U.S. at 203, 102 S.Ct. 3034. "Implicit" in the IDEA's guarantee of a free appropriate education "is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." *See id.* at 200, 102 S.Ct. 3034. There is no allegation made by plaintiffs that Sidney is not receiving the services that Ms. Carroll recommended she receive.

It is also not alleged that the placement is impairing Sidney's development or that there is inadequate staff or resources being made available to her. Plaintiffs merely allege that the placement is inadequate. This response is inadequate for a challenge to the FAPE provided by DCPS.

■ Although the IDEA guarantees a free appropriate education, it does not, however, provide that this education will be designed according to the parent's desires. *See id.* at 207, 102 S.Ct. 3034 ("The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child."). "Thus, proof that loving parents can craft a better program than a state offers does not, alone, entitle them to prevail under the Act." *Kerkam*, 862 F.2d at 886.

It is not clear why Ms. Shaw now contests Sidney's placement at J.O. Wilson Elementary School when she decided herself to move Sidney to that school and then agreed to that placement at the initial BLMDT meeting. There is no allegation that Sidney is not benefitting from the program at J.O. Wilson and absent evidence that J.O. Wilson is not an appropriate placement for Sidney, this Court cannot find that the hearing officer erred in concluding that DCPS has satisfied its statutory obligation by placing Sidney there. *See Rowley*, 458 U.S. at 209–10, 102 S.Ct. 3034 (reversing decision of district court and court of appeals that hearing impaired student was being denied a free appropriate public education because school did not adopt her parents' recommendation that a sign-language interpreter be placed in the student's class. "Neither the District Court nor the Court of Appeals found that petitioners had failed

to comply with the procedures of the Act, and the findings of neither court would support a conclusion that [the student's] educational program failed to comply with the substantive requirements of the Act."); *McAdoo*, 1988 WL 9592, at *11 (affirming hearing officer's decision that DCPS identified appropriate placement for student. "[P]laintiffs failed to carry their burden of proof and demonstrate by a preponderance of the evidence that [the school designated by DCPS for the minor child] was an inappropriate placement and the hearing officer's decision was erroneous."). *But see Kattan v. District of Columbia*, 691 F.Supp. 1539, 1542 (D.D.C.1988) (holding parents were entitled to placement of their choosing where "the preponderance of the evidence" supported the finding that DCPS' placement was inappropriate "because DCPS did not provide the minor plaintiff with an integrated [occupational therapy] program ... [,]which was necessary to conform to her IEP and to permit [the student] to benefit from her special education program."). There is no allegation in this case that Sidney is not receiving the services that her IEP identifies or that she is not benefitting from her placement at J.O. Wilson. On this record, the Court must conclude that DCPS has met its statutory obligation and is providing Sidney with a free appropriate public education at J.O. Wilson Elementary School.

### 3. *DCPS' alleged misconduct*

■ Plaintiffs argue that DCPS failed to sustain its burden of proving that the representative present at the IEP meeting was "qualified to provide or supervise provision of specially designed instruction to meet the unique needs of children with disabilities, and be knowledgeable about the general curriculum and about the availability of DCPS's resources[ ]" as required by 34 C.F.R. § 300.344. Compl. ¶ 18. This allegation was never presented to the hearing officer.[10] Therefore, it may not be raised for the first time in this Court. *See Cox v. Jenkins*, 878 F.2d 414, 420 (D.C.Cir.1989). Moreover, there is no allegation that an attempt was made to raise this issue before the hearing officer and she declined to consider it. And, "absent a showing that exhaustion would be futile or inadequate, a party must pursue all administrative avenues of redress under the [IDEA] before seeking judicial review under the Act." *Id.*

■ The same is true of plaintiff's argument that DCPS illegally altered the IEP to indicate that Ms. Hosten–Carter was present at the initial BLMDT meeting when in fact she was not. It appears, based on the hearing officer's silence on the subject, that this allegation was not made to the hearing officer. However, even if the plaintiffs did allege this fact and it is correct, their argument that Ms. Hosten–Carter's absence tainted the entire IEP process must be rejected. Plaintiffs opine that "[i]f the psychologist's presence were important enough to justify altering the IEP to falsely show her presence, then her presence was of like importance to the procedural integrity of the process." Pls.' Reply at 10. The Court cannot agree with this proposition. Whether Ms. Hosten–Carter, as the evaluating psychologist, was in fact present at the initial BLMDT meet-

---

10. In their request for a hearing, plaintiffs did seek to compel DCPS to disclose whether its representative at the initial BLMDT meeting was qualified pursuant to 34 C.F.R. § 300.344. Admin. R., Ex. 5. However, this issue was not addressed in the hearing officer's findings of fact or conclusions of law. Therefore, it appears from the administrative record before this Court that no evidence was presented to the hearing officer regarding this contention and the Court is not in a position to address the issue *de novo*.

ing is not a material fact.[11] There is no requirement in the statute that the evaluating psychologist be present at the meeting. *See* 34 C.F.R. § 300.344(a) (the IEP team shall consist of the parents of the child, at least one regular education teacher of the child; at least one special education teacher of the child and a qualified representative of the public agency). Nor do plaintiffs' point to any authority that mandated her presence. Plaintiffs also fail to point to any other alterations of the IEP that would materially impact Sidney's placement. Moreover, plaintiffs do not allege that there were procedural errors committed at the meeting that would justify this Court invalidating the IEP. What the facts show is that Ms. Shaw attended the initial BLMDT meeting; that the Ms. Hosten–Carter's report was available to the placement team at that time; and that there was a placement made to which Ms. Shaw agreed. Thus, whether or not DCPS added Ms. Hosten–Carter's name to the IEP after the fact does not render the initial BLMDT meeting that was conducted in accordance with the IDEA's mandate void. *Cf. Smith,* 786 F.Supp. at 45 (holding that hearing officer "properly concluded that DCPS did not comply with the procedural safeguards of the IDEA when it failed to participate in developing students', who attended private schools, IEPs as required by the statute. That proce-

dural defect rendered DCPS's IEP and its proposed placement invalid.") (citation omitted).

### 4. *Denial of Due Process—The Perelman Memorandum*

■ Considering what has been stated by the Court above, it appears to the Court that the principle reason plaintiffs have brought this action is to challenge a memorandum that was issued by DCPS, which states that DCPS will no longer pay attorney's fees to counsel who settle their clients' matters at the administrative level, absent inclusion in the settlement of an agreement that such fees will be provided by DCPS. This pronouncement by DCPS was made in a memorandum issued by Paula Perelman, Executive Director of DCPS' Division of Special Education, Mediation and Compliance office. Compl., Ex. 2. The memorandum, dated August 31, 2001, is addressed to "Attorneys Who Represent Parents Who Prevail Against the D.C. Public Schools in Actions Brought Under the Individuals With Disabilities Act." The memorandum provides, in pertinent part:

As you may know, on May 29, 2001, the U.S. Supreme Court issued a decision in *Buckhannon Board and Care Home, Inc., et al., v. West Virginia Department of Health and Human Resources, et al.,*

---

11. There does appear to be a genuine issue as to whether or not Ms. Hosten–Carter attended the IEP meeting. It is clear that the IEP given to Ms. Shaw does not contain Ms. Hosten–Carter's signature. And, despite an allegation in DCPS' opposition that Phillis Vincent, the IEP Coordinator, recalls Ms. Hosten–Carter being present at the meeting, Defs.' Opp'n at 9, no declaration or affidavit has been submitted to the Court to support this allegation. However, Ms. Hosten–Carter's signature does appear on the list of participants recorded in the IEP Meeting Notes. Admin. R., Ex. 4, DCPS–03. In their reply brief, plaintiffs offer the declaration of Alice

Coleman, a witness at the November 20, 2001, administrative hearing held in this matter, which indicates that Ms. Hosten–Carter stated in Ms. Coleman's presence "that she was on leave August 2, 2001, that she did not attend the August 2, 2001 IEP meeting, and that she did not sign the IEP at that August 2, 2001 IEP meeting." Pls.' Reply, Ex. 1, Declaration of Alice Coleman dated July 30, 2002. However, because the Court concludes that Ms. Hosten–Carter's presence at the initial BLMDT meeting does not materially affect its conclusion that the IEP and placement are appropriate, the Court does not consider this disputed fact to be material.

in which it held that the term "prevailing party" does not include 'a party who has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.' The D.C. Public Schools (DCPS) reads this decision to mean that DCPS is obligated to pay attorneys' fees attendant to settlement agreements ... only if the payment of such fees is a negotiated item in the settlement agreement involved.

Therefore, effective September 1, 2001, DCPS will not pay attorneys' fees incurred in the course of executing a settlement agreement with an attorney representing a parent alleging a DCPS violation of the IDEA unless the payment of these fees is a negotiated term of the settlement agreement in question.

*Id.*

Plaintiffs assert that this policy by DCPS violates plaintiffs' due process rights because the IDEA guarantees plaintiffs a right to counsel during the due process hearing, and it also creates a conflict of interest for attorneys representing parents in due process hearings as they must now balance their personal desire to obtain attorney's fees against the child's right to an appropriate educational placement. Counsel in this matter, Robert Lee Drake, presented a similar challenge to the Perelman Memorandum in *Johnson v. District of Columbia,* 190 F.Supp.2d 34 (D.D.C.2002) (Sullivan, J.). In *Johnson,* a parent Mr. Drake represented challenged the actions of DCPS in conditioning a settlement agreement on the parent's agreeing to waive her rights to seek prevailing party status and attorney's fees and costs. *Id.* at 37. The plaintiffs there also filed a motion for an order barring implementation of the Perelman memorandum. *Id.* at

38. The plaintiffs argued that DCPS' actions violated the IDEA's right to counsel provisions and that "these violations of the IDEA also constitute[d] violations of § 1983's protection against deprivations of rights secured by the Constitution and the laws of the United States." *Id.* at 40.

In denying DCPS' motion to dismiss in *Johnson,* Judge Sullivan held that the plaintiffs had "alleged facts that show a custom, practice, or policy by DCPS to infringe the rights of parents and children to legal representation under IDEA ... [and thus] plaintiffs have stated a claim for a violation of the IDEA's attorney's fees provision[s] ..." *Id.* at 46. Judge Sullivan also held that the plaintiffs had stated a cognizable claim under section 1983. *Id.* at 47. However, Judge Sullivan denied plaintiffs' request for injunctive relief to bar implementation of the Perelman memorandum because the plaintiffs lacked standing to do so. In reaching this conclusion, Judge Sullivan stated:

> [P]laintiffs must establish, among other things, that they will suffer imminent harm as a result of this policy.... [P]laintiffs allege that subsequent to the settlement of their underlying claim in January of 2001 and independent of the attorney's fees issue, plaintiffs recently challenged DCPS' failure to provide adequate services for [the child]. Therefore, argue plaintiffs, the potential resolution of that new IDEA claim via settlement brings plaintiffs within the impact of the Perelman memo. Plaintiffs have submitted only the unsubstantiated assertions of counsel to establish this potential injury. Without even an affidavit from plaintiffs, the Court has no basis to find that plaintiffs have or will suffer an irreparable harm from the implementation of this policy.

*Id.* at 48.[12] Thus, the *Johnson* court declined plaintiffs' attempt to have the court enjoin the implementation of the Perelman memorandum.[13]

This Court has previously held, with great reservation, that a party who achieves a favorable settlement agreement at the administrative level is not a prevailing party pursuant to the IDEA's attorney's fee provision. *Akinseye v. District of Columbia,* 193 F.Supp.2d 134, 139 (D.D.C.2002) (Walton, J.). In reaching this conclusion, this Court noted that:

> *Buckhannon* seems to leave no room to side-step the Court's conclusion that for a settlement agreement to elevate a plaintiff to the status of a prevailing party, it must bring about the 'material alteration of the legal relationship of the parties' . . . which, as stated before, the

Court said requires the *'imprimatur'* of the court. . . . That is not something the plaintiffs who settled their claims obtained.

*Id.* at 140 (internal citations omitted) (emphasis in original).[14]

This Court has not had the occasion to determine whether DCPS' policy regarding the denial of attorney's fees to parties who settle their matters at the administrative level rises to the level of a due process violation. And in this case, this is not a determination the Court must reach. That is because, unlike the *Johnson* case, there is no allegation in the record in this case that counsel negotiated a favorable settlement for his client and was forced to waive his right to attorney's fees as a result of the settlement.[15] And, in fact, despite the

---

**12.** This language from *Johnson* belies plaintiffs' counsel's assertion that Judge Sullivan implied in that case that "but for the absence of an affidavit of standing by the *Johnson* plaintiffs, he would have nullified *Perelman.*" Pls.' Reply at 12. Although Judge Sullivan did rule that he did not read the Supreme Court's decision in *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't Health & Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), to foreclose the recovery of attorney's fees to parents who settle their claims at the administrative level, he did not address the merits of plaintiff's claims regarding whether the Perelman memorandum violated the IDEA's right to counsel provisions or section 1983. He merely ruled that plaintiffs survived the motion to dismiss challenge regarding the recovery of attorney's fees.

**13.** The docket report regarding the *Johnson* case reflects that after both parties filed motions to alter the judgment and plaintiffs indicated they were seeking new counsel, plaintiffs eventually moved to dismiss their case with prejudice, which was granted by Judge Sullivan on June 4, 2002.

**14.** Since this Court's ruling in *Akinseye,* three other members of this Court have joined in the Court's assessment of *Buckhannon*'s impact. *See Adams v. District of Columbia,* 231

F.Supp.2d 52, 54 (D.D.C.2002) (Leon, J.) (holding, in an IDEA case, that "the Supreme Court's ruling was clearly intended to apply to fee-shifting provisions beyond those considered in *Buckhannon*."); *Alegria v. District of Columbia,* No. 00–2582, slip. op. at 5 (D.D.C. Sept. 9, 2002) (Kessler, J.) (holding that plaintiffs who settled IDEA cases and who did "not contend that they received judicial relief in those matters, let alone that they obtained a judgment on the merits or a consent decree[,]" were not prevailing parties in light of *Buckhannon* and *Oil, Chem. & Atomic Workers Int'l Union, AFL–CIO v. Dep't of Energy,* 288 F.3d 452 (D.C.Cir.2002)); *Heintz v. District of Columbia,* No. 01–1124, slip. op. at 8 (D.D.C. April 29, 2002) (Kollar–Kotelly, J.) (holding that plaintiffs who entered into a settlement agreement with the District could not obtain prevailing party status under the IDEA. "[T]he Court is bound by the clear and unmistakable language from the *Buckhannon* decision which states that 'private settlements do not entail the judicial approval' necessary to create prevailing party status.") (citation omitted).

**15.** In plaintiffs' Request for a hearing, counsel states that "DCPS has vested in one DCPS employee the authority to approve, reduce, or disprove payment of this counsel's attorney's

facts before the court in *Johnson,* where there had clearly been a negotiated settlement during which the plaintiffs' rights to attorney's fees was compromised, Judge Sullivan held that plaintiffs' lacked standing to challenge the Perelman memorandum. 190 F.Supp.2d at 48 ("[P]laintiffs have failed to establish their standing to challenge the implementation of this specific policy. In order for this Court to grant preliminary injunctive relief, plaintiffs must establish, among other things, that they will suffer imminent harm as a result of this policy[,]" which the Court concluded had not been demonstrated) (citation omitted). The facts in this case provide far less support for a standing argument than did the facts in *Johnson.*[16] There is no indication whatsoever that the Perelman memorandum impacted plaintiffs' rights to an attorney in this case. Plaintiffs had an administrative hearing where they were represented by counsel and they lost. They have challenged the decisions of the hearing officer in this Court as they have a right to do. 20 U.S.C. § 1415(i)(2)(A). None of the rights afforded by the IDEA therefore have been denied to them in this case. Further, as the Court has concluded that plaintiffs' have failed to demonstrate that the findings of the hearing officer were in error, they cannot be prevailing parties under

the IDEA and accordingly they are not entitled to attorney's fees. As such, defendant correctly posits that plaintiffs lack standing to challenge the Perelman memorandum in this case. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("[p]laintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions."). In this regard, a plaintiff must be able to demonstrate that "he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate' ..." *Id.* at 102, 103 S.Ct. 1660 (citations omitted). This has not been demonstrated here because plaintiffs have not identified what injury they have suffered or reasonably expect to suffer in the immediate future as a result of the Perelman memorandum. Therefore, the Court must conclude that plaintiffs are not entitled to summary judgment on their claim that the Perelman memorandum violated their rights to due process.

## IV. *Conclusion*

This is not a case where a child is being deprived of access to an appropriate edu-

---

fees ... [and] the foregoing creates a conflict of interest and ethical questions for parent's counsel under District of Columbia Bar Rule 1.7, unless the parent waives the conflict, which the parent did in this case to obtain legal representation by this counsel, which constitutes a denial of procedural and substantive due process." This position does not appear to have been presented to the hearing officer.

16. Plaintiffs allege in their complaint that "the Perelman Memorandum imposed a denial of due process on plaintiffs, by requiring plaintiffs' counsel to engage in settlement negotiations, negotiating with DCPS his own financial interests (recovery of attorney's fees)

simultaneously with negotiating a settlement in the best interests of the minor plaintiff." Compl. ¶ 39. It is not clear whether plaintiffs engaged in settlement discussions with DCPS and were discouraged from reaching a settlement because DCPS refused to enter into a favorable settlement with them that included payment of counsel's legal fees or whether plaintiffs were not offered a favorable settlement regarding the minor plaintiff's school placement. In any event, this case was not terminated as a result of a settlement, so the Court is at a loss as to how plaintiffs believe they have standing in this case to challenge the Perelman memorandum.

cation and educational services. This is also not a case where DCPS has engaged in unnecessary and harmful delay in obtaining educational services for a child in need of special education services. Further, this is not a case where the special education services that are being provided have been found to be deficient. Finally, this is not a case where the child's placement has been determined not to be educationally beneficial to the child. Rather, this is a case where DCPS has in fact provided the free appropriate education to which the child is entitled under the IDEA.

■ Defendants in this matter have not filed a cross motion for summary judgment. However, because the Court has denied plaintiffs' motion for summary judgment in all respects and has therefore addressed all the claims in their complaint, the Court will *sua sponte* enter judgment in favor of defendant since there are not any issues remaining for resolution. *Celotex Corp.*, 477 U.S. at 326, 106 S.Ct. 2548 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte* so long as the losing party was on notice that she had to come forward with all of her evidence.") (citation omitted); *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C.1997) ("A court may enter summary judgment, *sua sponte*, in favor of a party opposing summary judgment, even if, as in this case, that party has not made a formal cross-motion for summary judgment.") (citations omitted). Because plaintiffs filed the instant motion seeking summary judgment, the Court concludes they were on notice to come forward with all their evidence in support of their claims. Accordingly, summary judgment is entered in favor of the defendant.

### ORDER

This matter is before the Court on the Plaintiffs' Motion for Summary Judgment, Remand and Injunctive Relief [# 11]. For the reasons stated in the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that plaintiff's motion is denied. It is further

**ORDERED** that summary judgment is granted in favor of the defendant.