Mikeisha BLACKMAN,
et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

No. CIV.A. 97–1629 PLF.

United States District Court,
District of Columbia.

Aug. 22, 2003.

Tamara Lynn Seltzer, Bazelon Center for Mental Health Law, Ronald Lee Drake, Alisa H. Reff, Drinker, Biddle & Reath, Myrna L. Fawcett, Bonita Alexis Jones-Moon, Fawcett & Fawcett, Washington, DC, Paul Leonard Chassy, Chassy & Chassy, Kensington, MD Margaret A. Kohn, Kohn & Einstein, Andrew L. Lipps, Ky Elaine Kirby, Swidler, Berlin, Shereff & Friedman, L.L.P., Washington, DC, Carolyn W. Houck, Chevy Chase, MD, Charles Anthony Moran, James E. Williams, III, Jester & Williams, Washington, DC, Daniel Adlai Katz, Andalman & Flynn, Silver Spring, MD, Sara Dorsch, The Maryland Disability Law Center, Bal-

timore, MD, Travis Anthony Murrell, Murrell & Brown, James Edward Brown, James L. Brown & Associates, PLLC, Elizabeth Tacy Jester, Anna Elizabeth Jenefsky, Karen D. Alvarez, Washington, DC, Ellen Douglass Dalton, Paul S. Dalton, Dalton & Dalton, P.C., William E. Houston, Dalton & Dalton, P.C., Alexandria, VA, Arthur Hughes Fawcett, Jr., Diana Marjorie Savit, Bowytz, Savit Szymkowicz, L.L.P., Bethesda, MD, Lawrence Hart Huebner, Washington, DC, Michael Jeffrey Eig, Haylie Michelle Iseman, Michael J. Eig & Associates, P.C., Chevy Chase, MD, Matthew Barry Bogin, Futrovsky, Nitkin & Scherr, Chartered, Rockville, MD, Laura N. Rinaldi, Matthew I. Fraidin, Maria Ludmila Merkowitz, Office of Corporation Counsel, D.C. Washington, DC, for plaintiffs.

Andrew W. Racca, Steptoe & Johnson, L.L.P., Daniel Herbert Margolis, Barbara A. Miller, Birch, Horton, Bittner & Cherot, Charlotte Anne Bradley, U.S. Attorney'S Office, William Johnson Earl, Jr., Martin Lewis Grossman, Edward P. Taptich, Nancy S. Schultz, Urenthea McQuinn, Cary Dale Pollack, Robert C. Utiger, Melvin W. Bolden, Jr., Robert Ray Rigsby, Jeffery Thomas Infelise, Jonathan F. Potter, Eden I. Miller, Office of Corporation Counsel, D.C., Veleter Mazych, Cathye Hopkins, DCPS General Counsel, Daniel A. Rezneck, Office of Corporation Counsel, D.C., Washington, DC, Laurie Pouzzner McManus, Arlington, VA, Lisa Annette Bell, Office of the General Counsel, DC Dept. of Consumer & Regulatory Affair, Grace Perry-Gaiter, District of Columbia Public Library, Washington, DC, Barbara A. Miller, for defendants.

Charles Anthony Moran, Washington, DC, for intervenor-defendant/movant.

Elizabeth Tacy Jester, James E. Williams, III, Jester & Williams, Washington, DC, for claimant.

Elise T. Baach, Washington, DC, for special master.

Lisa Kay Coleman, D.C. Office Of Adjudications & Hearings, Washington, DC, for movant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court for consideration of five reports filed by the Special Master in which she recommends that the Court grant the motions for preliminary injunction filed on behalf of eleven members of the class. Plaintiffs' class counsel and/or counsel for defendants filed objections to the Special Master's reports and recommendations pursuant to Rule 53 of the Federal Rules of Civil Procedure. Counsel for the eleven plaintiffs responded. Underlying each motion for a preliminary injunction is a claim that the plaintiffs are being irreparably harmed by defendants' failure to schedule timely due process hearings in violation Section 1415(f) of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq.* ("IDEA"), Section 300.511 of the Code of Federal Regulations, 34 C.F.R. § 300.511, and Sections 5–3029.1 and 3030.1 of the District of Columbia Municipal Regulations, D.C. MUN. REGS. tit. 5, §§ 3000, *et seq.* (2003).

## I. BACKGROUND

### A. *The Special Master's Findings and Recommended Relief*

In her reports, the Special Master made the following findings of fact with respect to these eleven plaintiffs.

1. Claims of Afra Abdullah, *et al.*

With respect to the claims of Afra Abdullah, Charles "Tucker" Battle III, Elvin Charles, Zachary Devillier and James Tanney–Palmeter, the Special Master deter-

mined that in each case: (1) the District of Columbia Public Schools ("DCPS") either failed to find the student eligible for special education and/or related services under the IDEA or issued an individualized education program ("IEP") with which the parents disagreed; (2) the parents placed their child in a private school that provided the special education and related services they believed their child required; (3) the parents concurrently or shortly thereafter filed a request for a due process hearing challenging DCPS's determination, indicating, pursuant to DCPS instructions, three dates on which plaintiffs and plaintiffs' counsel were available for a hearing during the ensuing 35 days;[1] (4) with the exception of Afra Abdullah, DCPS sent a notice of a due process hearing to plaintiffs' counsel scheduled on none of the dates requested and at times at which either plaintiffs or plaintiffs' counsel were unavailable; DCPS made no additional efforts to schedule a hearing;[2] (5) DCPS failed to hold a timely due process hearing pursuant to Section 1415(f) of the IDEA and Sections 5–3029.1 and 5–3030.1 of the District of Columbia Municipal Regulations; (6) plaintiffs' counsel filed a motion for summary determination with the DCPS student hearing office that was not acted upon; (7) plaintiffs filed a motion for a preliminary injunction with this Court; and (8) DCPS sent plaintiffs a hearing notice months after the close of the period within which DCPS was statutorily required to hold the due process hearing and issue a determination, purporting to schedule a hearing two days before the already-scheduled meeting with the Special Master. *See* Abdullah Rep. at 2–8.

### 2. Claims of Emily Keller, *et al.*

With respect to the claims of Emily Keller, Liam McNamara and Margaret Kenworthy, the Special Master determined that in each case: (1) DCPS either failed to find the student eligible for special education and/or related services under the IDEA or issued an IEP with which the parents disagreed; (2) the parents placed their child in a private school that provided the special education and related services they believed their child required; (3) the parents concurrently or shortly thereafter filed a due process hearing request challenging DCPS's determination, indicating, pursuant to DCPS instructions, three dates on which plaintiffs and plaintiffs' counsel were available during the ensuing 35 days; (4) DCPS failed respond to plaintiffs' request and failed to conduct a timely due process hearing; (5) after the expiration of the statutory period within which DCPS was required to conduct a hearing and issue a decision, DCPS faxed to plaintiffs' counsel an "administrative clean up" form that asked counsel to identify the status of the child's case; (6) plaintiffs filed a motion for a preliminary injunction with this Court; and (7) DCPS scheduled a due process hearing in April 2003 without consultation with plaintiffs' counsel. *See* Report and Recommendations of the Special Master, Claim of Emily Keller, *et al.* ("Keller Rep.") at 2–5.

### 3. Claim of Shanice Brooks

With respect to the claim of Shanice Brooks, the Special Master found that

---

1. Under IDEA regulations, a student is entitled to an administrative due process hearing and a written decision within 45 days of the request for a hearing. *See* 34 C.F.R. § 300.511(a); *Walker v. District of Columbia,* 157 F.Supp.2d 11, 30 (D.D.C.2001); *see also* D.C. MUN. REGS. tit. 5, § 3030.1

2. With respect to plaintiff Afra Abdullah, the Special Master found as a fact, despite DCPS's assertions to the contrary, that Afra's counsel never received a notice for a Fall 2002 due process hearing. *See* Report and Recommendations of the Special Master, Claim of Afra Abdullah, *et al.* ("Abdullah Rep.") at 3.

DCPS originally had drafted an IEP that her parents found inadequate to her needs. *See* Report and Recommendations of the Special Master, Claim of Clarence Jetter, parent of Shanice Brooks ("Brooks Rep.") at 2. In response to the allegedly infirm IEP, plaintiffs' counsel filed a request for a due process hearing indicating three available dates. *See id.* Plaintiffs also discussed placement with a private provider that conditionally accepted Shanice, but as of the date of the Special Master's report Shanice remained in her original placement at a public elementary school. *See id.* DCPS represented to the Special Master that it had tried to contact plaintiffs' counsel to schedule a due process hearing to no avail, a claim that the Special Master found unconvincing. *See id.* at 3. Plaintiff then filed a motion for a preliminary injunction. *See id.* at 1.

### 4. Claim of Lillian deVrijer

With respect to Lillian deVrijer, the Special Master found that DCPS had developed two IEPs for Lillian, the second of which called for placement at a public school. *See* Report and Recommendations of the Special Master, Claim of Lillian deVrijer ("deVrijer Rep.") In response, plaintiffs requested a due process hearing. *See id.* At the end of the 45–day period in which DCPS was to have held a due process hearing and issued a hearing officer determination, DCPS issued a notice of a hearing without prior consultation with plaintiffs or their counsel. Plaintiffs were unable to attend on the date proposed. *See id.* Several months after the close of the 45–day period, plaintiffs received another notice of a hearing date that indicated that only two hours had been allotted for the hearing; plaintiffs rejected this proposal, indicating that the hearing would

take a full day. *See id.* at 4. It is unclear what response DCPS had to this representation. Plaintiffs then filed a motion for a preliminary injunction. *See id.*

### 5. Claim of Emily Cooper

With respect to the claim of Emily Cooper, the Special Master found that DCPS had issued an IEP with which her parents disagreed. *See* Report and Recommendations of the Special Master, Claim of Emily Cooper ("Cooper Rep.") at 2. Her parents then placed Emily in a private school and filed a due process hearing request indicating three dates on which plaintiffs and plaintiffs' counsel were available. DCPS failed to schedule a timely due process hearing. *See id.* at 2–3. Several months after the close of the period within which DCPS was statutorily required to hold the due process hearing and issue a determination, DCPS proposed a two-hour hearing on March 13, 2003. Plaintiffs rejected this proposal, indicating that a full day hearing was necessary. DCPS did not respond, and plaintiffs filed their motion for a preliminary injunction. *See id.* at 3.

### B. *The Special Master's Conclusions of Law and Recommendations for Relief*

The Special Master concluded that each plaintiff has met the requirements for emergency injunctive relief. First, the Special Master found that the plaintiffs already had prevailed on the merits of their underlying claims when the Court entered a judgment for plaintiffs in this action on the issue of liability, citing the Court's Opinion of June 3, 1998 in this matter. *See* Abdullah Rep. at 9.[3] Second, the Special Master determined that plaintiffs have demonstrated irreparable harm because DCPS's failure to provide timely

---

**3.** Where the Special Master's conclusions of law and/or recommendations for relief in one report are reflective of her position with re-

spect to the other plaintiffs, only one report is cited.

due process hearings "forced" the parents to unilaterally place and pay for the education of their children in an appropriate setting when in fact DCPS has the statutory obligation to provide an appropriate special education at government expense. *Id.* Furthermore, she concluded that DCPS's failure to provide timely due process hearings constitutes irreparable harm in and of itself by denying plaintiffs a fundamental right afforded by the IDEA. *See id.* Third, the Special Master concluded that the rights of defendants will not be impaired by her findings and recommendations because defendants remain able to change any placement ordered by the Court provided the change is made in compliance with the IDEA. *See id.* at 10. Fourth, the Special Master noted that the Court already has recognized the public interest in implementing the IDEA in the Court's earlier opinions in this matter. *See id.* at 10.

The Special Master recommends certain relief for ten of the eleven students, directing DCPS: to make retroactive payments to those private providers that the children have attended from their dates of enrollment through the end of the 2002–2003 school year; to conduct due process hearings with respect to each plaintiff within one month of the date of this Opinion; and to keep plaintiffs at their current placements through the end of the 2002–2003 school year absent express consent to a change in placement from the parents. *See* Abdullah Rep., Proposed Orders at 1.[4] For the remaining plaintiff, Shanice Brooks, who currently is placed in a public school, the Special Master recommends that the Court direct DCPS to place Shanice at St. Coletta of Greater Washington,

Inc., the private provider that conditionally accepted her, through the end of the 2002–2003 school year, to conduct a due process hearing within one month of the date of this Opinion, and not to remove Shanice from St. Coletta prior to the end of the 2002–2003 school year without the express consent of her parents. *See* Brooks Rep., Proposed Order at 1.[5]

### C. *Objections to the Reports and Recommendations*

Both defendants and plaintiffs' class counsel filed objections to the Special Master's reports on two main bases. First, defendants assert that plaintiffs have not demonstrated the necessary irreparable injury or threat of irreparable injury required for preliminary injunctive relief. Defendants and plaintiffs' class counsel argue that the parents were not forced to place their children in private schools as a result of the failure of DCPS to provide timely due process hearings but instead chose to do so, and that the cost of funding the students is not evidence of irreparable harm justifying injunctive relief. *See* Objection of Defendants District of Columbia and District of Columbia Public Schools to Reports and Recommendations of Special Master, Claims of Clarence Jetter, *et al.* ("Defs.' Jetter Obj.") at 3; Objection of Defendants District of Columbia and District of Columbia Public Schools to Reports and Recommendations of Special Master, Claims of Emily Keller, *et al.* ("Defs.' Keller Obj.") at 1 (incorporating by reference the arguments put forth in defendants' objections to the Jetter and deVrijer Reports); Response of Class Counsel to Objections by Defendants to Reports and Recommendations of the Special Master ("Cl.Consl.Resp.") at 4–5. In

---

4. Because of the elapsed time between the filing by the Special Master of her reports and the issuance of this Opinion, the 2002–2003 school year now has ended.

5. Because the 2003–2003 school year has ended, much of the relief proposed for Shanice now is moot.

this same vein, defendants object to the Special Master's conclusion that a denial of a timely due process hearing is an automatic denial of a free appropriate education required by the IDEA that causes harm to plaintiffs. *See* Defs.' Jetter Obj at 3–6.

Second, defendants object to the Special Master's recommended relief. They assert that it is inappropriate to require DCPS to fund the students' placements in private schools retroactively (for the time already spent in the private placements) and prospectively (through the end of the school year) irrespective of the outcome of a due process hearing officer's determination. Defendants argue that DCPS should not be ordered to pay the providers for the time a student already has spent in the private placement unless and until a hearing officer determines that the private placement is appropriate; after all, defendants assert, the hearing officer may find that the placement was not appropriate to begin with. Defendants also challenge the logic of ordering DCPS to pay the students' tuitions through the end of the 2002–2003 school year on the ground that it effectively would negate any hearing officer's subsequent determination that the appropriate placement lies elsewhere. *See* Defs.' Jetter Obj. at 6–7; Objection of Defendants District of Columbia and District of Columbia Public Schools to Reports and Recommendations of Special Master, Claims of Erik deVrijer, *et al.* ("Defs.' deVrijer Obj.") at 5–6.[6] Defen-

dants propose as an alternative remedy that the Court simply direct DCPS to conduct due process hearings and to issue decisions promptly. *See id.*[7]

## II. DISCUSSION

### A. *Standard of Review for Emergency Injunctive Relief*

■ Under the familiar standard for deciding whether to grant emergency injunctive relief, the Court must consider (1) whether there is a substantial likelihood that plaintiffs will succeed on the merits of their claims, (2) whether plaintiffs will suffer irreparable injury absent an injunction, (3) the harm to defendants or other interested parties (balance of harms), and (4) whether an injunction would be in the public interest or at least not be adverse to the public interest. *See Serono Laboratories, Inc. v. Shalala,* 158 F.3d 1313, 1317–18 (D.C.Cir.1998); *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C.Cir. 1989); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977); *Milk Industry Foundation v. Glickman,* 949 F.Supp. 882, 888 (D.D.C.1996).

[2] Plaintiffs are not required to prevail on each of these factors. Rather, under *Holiday Tours,* the factors must be viewed as a continuum, with more of one factor compensating for less of another. "If the arguments for one factor are par-

---

**6.** Because the 2002–2003 school year has now ended, these two arguments effectively merge into one: the parents should not be reimbursed for their payments to private providers if the hearing officer ultimately determines that such placements are inappropriate.

**7.** Plaintiffs filed briefs responding to these objections and endorsing the Special Master's findings and recommendations. *See* Plaintiffs' Response to Defendants' Objection to the

Reports and Recommendations of the Special Master, Claims of Afra Abdullah, *et al.;* Plaintiffs' Response to Defendants' Objection to the Reports and Recommendations of the Special Master, Claims of Lillian deVrijer and Emily Cooper; Plaintiffs' Reply to Class Counsel's Response to Reports and Recommendations of the Special Master and to Defendants' Omnibus Reply; Reply to Defendants' Objections in the matter of Emily Keller, *et al.*

ticularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 747 (D.C.Cir.1995). An injunction may be justified "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.* Conversely, when the other three factors strongly favor interim relief, a court may grant injunctive relief when the moving party has merely made out a "substantial" case on the merits. The necessary level or degree of likelihood of success that must be shown will vary according to the Court's assessment of the other factors. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d at 843–45. In sum, an injunction may be issued "with either a high probability of success and some injury, or vice versa." *Cuomo v. United States Nuclear Regulatory Comm'n,* 772 F.2d 972, 974 (D.C.Cir.1985).

### B. Denial of Timely Due Process Hearings and Resulting Irreparable Harm

The crux of the disagreement among the parties lies in the second prong of the preliminary injunction standard: irreparable harm. The Special Master concluded that DCPS's failure to provide timely due process hearings constitutes irreparable harm to plaintiffs because the right to a hearing "is absolute, and the failure to provide a timely hearing has consequences that are absolute—that is, there is no substitute available to the student and his or her family. It is the absolute lack of any alternative to the student that causes 'irreparable harm' at the hands of DCPS." deVrijer Rep. at 5–6. Defendants counter that because the timely provision of due process hearings is a procedural protection provided in the IDEA, plaintiffs must demonstrate that actual harm or prejudice resulted from the denial of a hearing in order to merit injunctive relief. In the absence of such harm, the failure to provide a hearing may be remedied by directing that such a hearing promptly be held. *See* Defs.' Jetter Obj. at 4.

Defendants' failure to provide a *timely* due process hearing to plaintiffs is not an unimportant or technical violation of the procedural safeguards provided for in the IDEA. Rather, it is the denial of a fundamental component of the due process protections afforded by the statute. As the Supreme Court noted in *Board of Education of the Hendrick Hudson Central School District v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the procedural due process protections included by Congress in the IDEA are of critical importance to effectuating the goals of the statute:

When the elaborate and highly specific procedural safeguards embodied in § 1415 are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, *see, e.g.,* §§ 1415(a)-(d), as it did upon the measurement of the resulting IEP against a substantive standard. We think that the congressional emphasis upon full participation of concerned parties throughout the development of the IEP, as well as the requirements that state and local plans be submitted to the Secretary for approval, demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases

assure much if not all of what Congress wished in the way of substantive content in an IEP.

*Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. at 205–06, 102 S.Ct. 3034. "The Act ... was intended to ensure prompt resolution of disputes regarding appropriate education for handicapped children." *Spiegler v. District of Columbia*, 866 F.2d 461, 467 (D.C.Cir.1989). Of all the procedural rights provided by Congress in the IDEA, "[t]he due process hearing is the Act's primary procedural protection" in effectuating this purpose. *Kroot v. District of Columbia*, 800 F.Supp. 976, 982 (D.D.C. 1992).

■ In light of the primacy the due process hearing has in ensuring plaintiffs' substantive rights under the statute, the Court concludes that DCPS's failure to provide timely due process hearings and determinations can itself constitute the denial of a free appropriate education. *See Walker v. District of Columbia*, 157 F.Supp.2d at 31, 32 (DCPS denied plaintiff a free appropriate education in failing to provide plaintiff timely due process hearing); *Evans v. Board of Education of the Rhinebeck Central School District*, 930 F.Supp. 83, 93 (S.D.N.Y.1996) ("A violation of the Act's procedural guarantees may be a sufficient ground for holding that a school system has failed to provide a free appropriate public education and thus has violated the Act."). While a slight delay in the provision of a hearing after a request has been made or a slight delay in rendering a decision may be an excusable procedural infirmity in some cases, the failure to offer the parents and their children a timely hearing for months after the expiration of the 45–day period, as was the case here, crosses the line from process to substance. *See id.* at 93–94 ("[p]rocedural flaws do not automatically require a finding of a denial

of a free appropriate education, but procedural inadequacies that result in loss of educational opportunity clearly result in the denial of a free appropriate education.").

■ As this Court previously has held, the failure to provide an IEP, the failure to hold a due process hearing, or the failure to provide a written determination in a timely manner after requests for an IEP meeting or a hearing have been made constitutes the denial of a free appropriate public education as required by the IDEA. *See Walker v. District of Columbia*, 157 F.Supp.2d at 31, 32. Where there is a denial of a free appropriate education because no hearing has been held and no determination has been issued, and a proper placement therefore has not been made, there results a *per se* harm to the student and the irreparable injury requirement for a preliminary injunction has been satisfied. Indeed, each day a child is denied a free appropriate education by such procedural dereliction of a school system he or she is harmed yet again. *See Cox v. Brown*, 498 F.Supp. 823, 828–29 (D.D.C.1980) (irreparable harm results when students "[lack] each day of their young lives an appropriate education, one that is sensitive to their particular disabilities, commensurate to their levels of understanding, and fulfilling their immediate needs"). As the Court previously noted in this very case:

> [T]he failure of the District to comply with its statutory obligations and provide appropriate educational placements can have a devastating impact on a child's well-being. "Any agency whose appointed mission is to provide for the education and welfare of children fails that mission when it loses sight of the fact that, to a young, growing person, time is critical. While a month in the life of an adult may be insignificant, at

the rate at which a child develops and changes, especially one at the onset of biological adolescence with or without special needs like those of our plaintiff, a few months can make a word of difference in the life of that child."

*Blackman v. District of Columbia,* 185 F.R.D. 4, 7–8 (D.D.C.1999) (quoting *Foster v. District of Columbia,* Civil Action No. 82–0095, Memorandum Opinion and Order of February 22, 1982 at 4 (D.D.C. Feb. 22, 1982)); *see also Spiegler v. District of Columbia,* 866 F.2d at 466–67 (Act's procedural requirement for periodic and individualized assessments of each special education child "evinces a recognition that children, particularly young children, develop quickly and that a placement decision that may have been appropriate a year ago may no longer be appropriate today.").[8]

The conclusion that a *per se* harm results from the denial of a free appropriate education stemming from the failure to provide a timely due process hearing relieves plaintiffs from any burden to articulate an additional, particularized harm. When a plaintiff's rights to the due process hearing are circumscribed in significant ways, a plaintiff need not show prejudice in order to demonstrate injury. *See Smith v. Henson,* 786 F.Supp. 43, 45–46 (D.D.C. 1992) (establishing a time limit for filing due process hearing requests not otherwise imposed by the IDEA "violates the procedural rights afforded by the IDEA

regardless of any actual prejudice"). It follows that where DCPS has outright denied a child a timely due process hearing, DCPS cannot claim that the denial of a free appropriate education has not occurred. It has.

■ The Court also rejects defendants' argument that these students have not been denied a free appropriate education because, with the exception of Shanice Brooks, they currently attend private schools at which they have been placed by their parents. *See* Defs.' Jetter Opp. at 3–4. The issue here is not the parents' financial ability to fund their children at private schools pending the outcome of a due process hearing. The harm is the denial by DCPS of a *free appropriate education,* and this harm is not dependant on the financial resources of an individual plaintiff's family. Put simply, the children cannot be denied their substantive right to a free appropriate education under the IDEA because they are fortunate enough to have parents who can afford to fund their education in private schools while waiting for DCPS to provide the hearings required by law that will determine whether the child's private placement or some other placement is the appropriate one. Any other conclusion would require parents to deny their children an education altogether in order to protect their rights under the statute. The Court will not endorse such a perverse incentive.

---

**8.** As the court of appeals noted in *Spiegler,* during the final Senate debate the principal sponsor of the IDEA, Senator Harrison Williams, stressed the importance of providing prompt due process hearings:

> I cannot emphasize enough that delay in resolving matters regarding the education program of a handicapped child is extremely detrimental to his development. The interruption or lack of the required special education and related services can result in a substantial setback to the child's develop-

ment. Thus, in view of the urgent need for prompt resolution of questions involving the education of handicapped children it is expected that all hearings and reviews conducted pursuant to these provisions will be commenced and disposed of as quickly as practicable consistent with a fair consideration of the issues involved.

*Spiegler v. District of Columbia,* 866 F.2d at 467 (citing 121 CONG. REC. 37,416 (1975) (statement of Senator Williams)).

Indeed, this Court rejected precisely this argument in *Block v. District of Columbia*, 748 F.Supp. 891, 897 (D.D.C.1990). In *Block*, the plaintiff mother placed her son in a private school during the pendency of due process proceedings in response to the closing of his former placement school, also a private school, and to DCPS's failure to produce a new IEP. Denying defendants' claim that they should not be required to fund the student's private provider retroactively to the date of enrollment because his mother unilaterally had placed the student with the private school, the Court in *Block* concluded:

> Even DCPS cannot seriously argue that Stephen's mother simply should have kept Stephen out of school and waited patiently until the first day of school had come and gone in the hope that DCPS somehow would save the day or that the Blocks should have foregone their statutory right to challenge DCPS' incomplete and inappropriate IEP. DCPS lost the right to make this "unilateral decision" argument when it failed to comply with [the statute's] procedural requirements, about which the Supreme Court has stated: "We think that the importance Congress attached to [the statute's] procedural safeguards cannot be gainsaid."

*Block v. District of Columbia*, 748 F.Supp. at 897 (citing *Board of Education of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. at 205, 102 S.Ct. 3034). "Where a public school system has default-ed on its obligations under the IDEA, a private school placement is 'proper under the Act' if the education by said school is 'reasonably calculated to enable the child to receive educational benefits.'" *Wirta v. District of Columbia*, 859 F.Supp. 1, 5 (D.D.C.1994) (quoting *Board of Education of the Hendrick Hudson Central District v. Rowley*, 458 U.S. at 207, 102 S.Ct. 3034).

Defendants' lengthy string of citations included in their objections to the Special Master's Reports does not undermine the Court's conclusion that plaintiffs have adequately alleged irreparable harm. *See* Defs.' Jetter Obj. at 4–6. Some of the cited cases reflect a requirement in other circuits that a plaintiff demonstrate prejudice resulting from a violation of specific procedural protections of the IDEA in order to obtain relief under the statute. In none of the cases cited, however, did a court hold that a claim for relief based on the denial of a timely due process hearing required a showing of actual harm beyond the failure to provide a hearing itself. Even Judge Walton in his decision in *Shaw v. District of Columbia*, 238 F.Supp.2d 127 (D.D.C.2002), a case on which defendants heavily rely, noted that the denial of a due process hearing in compliance with the IDEA affected a child's primary procedural protections and thus violated the statute. *See Shaw v. District of Columbia*, 238 F.Supp.2d at 139 (citing *Smith v. Henson*, 786 F.Supp. at 45–46).[9] But unlike the present case, *Shaw* was "not a case where a child is being deprived access to an appropriate education . . . [or] where

---

**9.** Judge Robertson's decision in *Andradez v. District of Columbia*, Civil Action No. 02–1439, Memorandum (D.D.C. Jan. 23, 2003), also relied on by defendants, fails to buoy defendants' argument. The decision merely stands for the unremarkable proposition that "noncompliance with a procedural regulation, without more, does not establish a denial of a [free appropriate education]." *Andradez v. District of Columbia*, Civil Action No. 02–1439, Memorandum at 2 (concluding that 39-day delay in formulating new IEP does not constitute the denial of a free appropriate education). Here, there is "more"—the outright failure to comply with the statutory provision enacted specifically to ensure protection of plaintiffs' due process rights.

DCPS has engaged in unnecessary and harmful delay." *Id.* at 144–45.

### C. *The Remaining Prongs of the Injunctive Relief Standard*

The Court adopts the Special Master's conclusions with respect to the remaining prongs of the standard for emergency injunctive relief. *See* Abdullah Rep. at 9–10. Success on the merits of the underlying claim is assured in light of the Court's previous finding of liability in this matter. *See* Opinion of June 3, 1998 at 13. The Special Master also is correct that the provision of injunctive relief to these eleven plaintiffs does not disturb the ongoing rights of defendants because the defendants remain able to change any placement ordered by the Court, provided the change is made in a manner that complies with the IDEA. *See* Abdullah Rep. at 10. Finally, the Special Master properly acknowledged the significant public interest in the proper implementation of the IDEA. *See id.* at 10.

### D. *Adequacy of Recommended Remedy*

The Special Master recommended three remedies for ten of the eleven students: (1) maintenance of those students' placements through the end of the 2002–2003 school year; (2) the provision of due process hearings by DCPS within one month from the date of any Court order; and (3) reimbursement of monies paid by the parents for the private schools currently attended by the students for the 2002–2003 school year. *See* Abdullah Rep., Proposed Orders at 1. The Special Master's first recommendation—that DCPS be ordered to maintain placements at the private schools through the end of the 2002–2003 school year—is moot because the school year has ended. The children are still without due process hearings, however.

The Court therefore directs that DCPS shall issue notices of placement for the children at the private provider of the parents' choice for the upcoming 2003–2004 school year and that such placements shall remain in effect until such due process hearings are conducted and decisions are issued. If the due process hearing officer determines on an individual basis that a child's placement should be elsewhere, DCPS can issue a new notice of placement at that time.[10] As the new school year fast approaches, the Court recognizes the necessity for these students to have appropriate placements as soon as possible. The Court therefore will adopt the Special Master's second recommendation that DCPS conduct the due process hearings requested by these plaintiffs immediately, but no later than 10 business days from the date of this Opinion.

■ Finally, the Court adopts the Special Master's third recommendation, with one caveat. The Special Master recommended that the parents be reimbursed for the money they have paid and may continue to pay to private providers until DCPS complies with the IDEA. Reimbursement for payments made to private providers by parents who unilaterally place their child in a private placement after the child has been denied a free appropriate education by his or her public school system is not a novel remedy. *See School Committee of the Town of Burlington, Massachusetts v. Department of Education of Massachusetts,* 471 U.S. 359, 370, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) ("[W]e are confident that by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case.") (quoting 20 U.S.C. § 1415(i)(2)); *see also Holland v. District*

---

**10.** DCPS shall issue a notice of placement for Shanice Brooks, who spent the 2002–2003 in a public school placement, at St. Coletta of Greater Washington, Inc.

*of Columbia,* 71 F.3d 417, 420 n. 3 (D.C.Cir.1995); *Block v. District of Columbia,* 748 F.Supp. at 897. In fact, the IDEA itself expressly provides for the reimbursement of monies paid by parents who unilaterally place their children with private providers under certain circumstances:

> (i) [This] subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate education available to the child and the parents elected to place the child in such private school or facility.
> (ii) If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10)(C)(i) and (ii).[11]

Nor does reimbursement for payments to private providers to parents whose children have been denied a free appropriate education unduly or unfairly burden defendants. As the Supreme Court has announced, "public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice." *Florence County School District Four v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). Here, DCPS has done neither even though it indisputably is aware of its responsibilities under the statute. How could it not be aware? It already has been held liable in this very case for violating the statute by failing to provide timely due process hearings and decisions to hundreds of class members. *See Blackman v. District of Columbia,* Civil Action No. 97–1629, Opinion at 13 (D.D.C. June 3, 1998). Indeed, it is defendants' failure to respond properly to this decision in the case of these eleven children that brought plaintiffs' claims before the Court today. In the circumstances presented, reimbursement to these plaintiffs for payments they made to private providers is an appropriate remedy. *See Florence County School District Four v. Carter,* 510 U.S. at 15, 114 S.Ct. 361; *School Committee of the Town of Burlington, Massachusetts v. Department of Education of Massachusetts,* 471 U.S. at 369–70, 105 S.Ct. 1996.

As the Court already has determined, DCPS denied plaintiffs a free appropriate education when the 45–day period within which DCPS was required to conduct due process hearings and issue determinations expired without any hearings having taken place. *See* Section II(B), *supra.* It is appropriate therefore that the plaintiff parents be reimbursed for those months in which their children were denied due process hearings following the expiration of the 45–day period. Plaintiffs should not

---

**11.** This provision of the statute is not directly applicable to the current circumstances because it applies when a due process hearing has taken place and a decision has been issued. The Court takes guidance from this provision, however, by recognizing that reimbursement is available only after a free appropriate education has been denied, as it has here.

be reimbursed, however, for those days in which their child had not yet been denied a free appropriate education—that is, the period before any request for a hearing had been made or the period between the time of the request and the expiration of the 45–day period. To provide reimbursement for the period of time prior to the expiration of the 45–day period effectively would disregard the fact that DCPS had a 45–day window in which it could have fulfilled its responsibilities under the statute. On the other hand, to deny plaintiffs reimbursement after the expiration of the 45–day period would force parents to keep their children from receiving an appropriate education while waiting for many months for DCPS to comply with its statutory duties.[12]

### E. *The Intervening Administrative Due Process Hearings*

█ There remains one final issue with respect to five of these students. After the Special Master issued her reports and recommendations addressing the motions for preliminary injunction currently before the Court, but prior to the issuance of this Opinion, defendants conducted due process hearings on plaintiffs' claims and issued decisions dismissing the claims with prejudice. *See* Motion for an Order to Show Cause in the Matter of Afra Abdullah ("Abdullah Mot. to Show Cause") at 1; Motion for an Order to Show Cause in the Matter of Charles Tucker Battle at 1; Motion for an Order to Show Cause in the Matter of Emily Cooper; Motion for an Order to Show Cause in the Matter of Liam McNamara at 1; Motion for an Order to Show Cause in the Matter of Margaret Kenworthy at 1. Plaintiffs did not participate in these hearings, having ad-

vised DCPS that they believed such proceedings would improperly infringe on the Court's jurisdiction over the instant matters and would create the risk of inconsistent decisions from the hearing officer and the Court. *See* Abdullah Mot. to Show Cause at 2. It appears that plaintiffs' nonparticipation was the basis for the dismissals with prejudice. *See id.*, Ex. AA–3, Hearing Officer's Determination in the Matter of Afra Abdullah at 3.

After the hearing officers dismissed the claims, plaintiffs filed motions to show cause why DCPS and its hearing officers should not be held in contempt for taking such actions. Pursuant to the Court's Order to Show Cause of July 1, 2003, defendants filed a response refuting such claims, to which plaintiffs responded.

The Court concludes that the steps taken both by DCPS and by plaintiffs impeded the appropriate educational placement of these children, which is the fundamental purpose of the IDEA. It was not contemptuous for DCPS to have made an effort to comply with the Special Master's recommendations to hold prompt due process hearings even before the Court had reviewed her recommendations. Nevertheless, whether plaintiffs were right to refuse to participate in the hearings on the ground that the issues to be addressed at the hearings were also before the Court, DCPS was wrong to conduct what amounted to sham hearings in the absence of plaintiffs and their counsel and to dismiss plaintiffs' claims with prejudice on the basis of plaintiffs' failure to participate. The fact that an attorney from the Office of the General Counsel of DCPS participated in

---

12. The Court must assume that the children's private placements were appropriate. It can be presumed that these parents placed their children with providers that met each child's special education needs. More importantly,

the Court lacks an administrative record against which to evaluate the private placements because of the defendants' dereliction in their duties by failing to provide administrative due process hearings.

these sham hearings demonstrates either a complete disregard for these Court proceedings or vindictiveness on the part of DCPS and its hearing officers against plaintiffs for raising their claims in Court. Good lawyers for both sides should have brought this dispute to the Special Master's attention as soon as it arose. Such action likely would have resulted in a compromise in which the due process hearings could have taken place without jeopardizing plaintiffs' remaining claims before the Court. Regrettably, to the detriment of the children, neither side took such steps.

### III. CONCLUSION

For the foregoing reasons, the Court accepts in part and rejects in part the reports and recommendations filed by the Special Master addressing the preliminary injunction motions filed on behalf of Afra Abdullah, Charles "Tucker" Battle III, Elvin Charles, Zachary Devillier James Tanney–Palmeter, Emily Keller, Liam McNamara, Margaret Kenworthy, Shanice Brooks, Lillian deVrijer and Emily Cooper. The Court also denies plaintiffs' motions for an order to show cause why defendants and certain DCPS student hearing officers should not be held in contempt of court. Orders consistent with this Opinion shall issue this same day.

SO ORDERED.

### *ORDER*

For the reasons set forth in a separate Opinion issued this same day, it is hereby

ORDERED that the motion for preliminary injunction filed by Idriys and Melva Abdullah, parents and next friends of Afra Abdullah [1003] is GRANTED; it is

FURTHER ORDERED that

1. the District of Columbia Public Schools ("DCPS") shall issue immediately a notice of a placement for Afra Abdullah at Kingsbury Day School and shall fund this placement prospectively until such time as DCPS issues a notice of change in placement that is in accordance with the procedural protections provided for by the Individuals with Disabilities Education Action, 20 U.S.C. §§ 1400, *et. seq.* ("IDEA");

2. DCPS shall fund this placement retroactively to October 27, 2002, 45 days after plaintiffs Idriys and Melva Abdullah filed their administrative due process hearing request on September 12, 2002;

3. DCPS shall conduct a due process hearing to determine the need for special education services for Afra Abdullah and the appropriateness of the Kingsbury Day School placement 10 business days from the date of this Order. The hearing shall be scheduled for no less than six (6) hours unless otherwise agreed by the parties; it is

FURTHER ORDERED that the motion for preliminary injunction filed by Charles Battle Jr. and Dina Battle, parents and next friends of Charles "Tucker" Battle III [1007] is GRANTED; it is

FURTHER ORDERED that

1. DCPS shall issue immediately a notice of a placement for Charles "Tucker" Battle III at Kingsbury Day School and shall fund this placement prospectively until such time as DCPS issues a notice of change in placement that is in accordance with the procedural protections provided for by the IDEA;

2. DCPS shall fund this placement retroactively to October 10, 2002, 45 days after plaintiffs Charles Battle Jr. and Dina Battle filed their administrative due process hearing request on August 26, 2002;

3. DCPS shall conduct a due process hearing to determine the need for special education services for Charles "Tucker"

Battle III and the appropriateness of the Kingsbury Day School placement 10 business days from the date of this Order. The hearing shall be scheduled for no less than four (4) hours unless otherwise agreed by the parties; it is

FURTHER ORDERED that the motion for preliminary injunction filed by Anthony and Joeann Charles, parents and next friends of Elvin Charles [1006] is GRANTED; it is

FURTHER ORDERED that

1. DCPS shall issue immediately a notice of a placement for Elvin Charles at Kingsbury Day School and shall fund this placement prospectively until such time ,as DCPS issues a notice of change in placement that is in accordance with the procedural protections provided for by the IDEA;

2. DCPS shall fund this placement retroactively to October 24, 2002, 45 days after plaintiffs Anthony and Joeann Charles filed their administrative due process hearing request on September 9, 2002;

3. DCPS shall conduct a due process hearing to determine the need for special education services for Elvin Charles and the appropriateness of the Kingsbury Day School placement 10 business days from the date of this Order. The hearing shall be scheduled for no less than four (4) hours unless otherwise agreed by the parties; it is

FURTHER ORDERED that the motion for preliminary injunction filed by Ronald and Linda Devillier, parents and next friends of Zachary Devillier [1004] is GRANTED; it is

FURTHER ORDERED that

1. DCPS shall issue immediately a notice of a placement for Zachary Devillier at Kingsbury Day School and shall fund this

placement prospectively until such time as DCPS issues a notice of change in placement that is in accordance with the procedural protections provided for by the IDEA;

2. DCPS shall fund this placement retroactively to October 5, 2002, 45 days after plaintiffs Ronald and Linda Devillier filed their administrative due process hearing request on August 21, 2002;

3. DCPS shall conduct a due process hearing to determine the need for special education services for Zachary Devillier and the appropriateness of the Kingsbury Day School placement 10 business days from the date of this Order. The hearing shall be scheduled for no less than six (6) hours unless otherwise agreed by the parties; it is

FURTHER ORDERED that the motion for preliminary injunction filed by David Palmeter and Faith Tanney, parents and next friends of James Tanney–Palmeter [1005] is GRANTED; it is

FURTHER ORDERED that

1. DCPS shall issue immediately a notice of a placement for James Tanney–Palmeter at New Dominion School and shall fund this placement prospectively until such time as DCPS issues a notice of change in placement that is in accordance with the procedural protections provided for by the IDEA;

2. DCPS shall fund this placement retroactively to October 14, 2002, 45 days after plaintiffs David Palmeter and Faith Tanney filed their administrative due process hearing request on August 30, 2002;

3. DCPS shall conduct a due process hearing to determine the need for special education services for James Tanney–Palmeter and the appropriateness of the New Dominion school placement 10 business days from the date of this Order. The hearing shall be scheduled for no less

than four (4) hours unless otherwise agreed by the parties; it is

FURTHER ORDERED that the motion for preliminary injunction filed by Nicholas Keller, parent and next friend of Emily Keller [1053] is GRANTED; it is

FURTHER ORDERED that

1. DCPS shall issue immediately a notice of a placement for Emily Keller at the Lab School and shall fund this placement prospectively until such time as DCPS issues a notice of change in placement that is in accordance with the procedural protections provided for by the IDEA;

2. DCPS shall fund this placement retroactively to December 20, 2002, 45 days after plaintiff Nicholas Keller filed his administrative due process hearing request on November 5, 2002;

3. DCPS shall conduct a due process hearing to determine the need for special education services for Emily Keller and the appropriateness of the Lab School placement 10 business days from the date of this Order. The hearing shall be scheduled for no less than six (6) hours unless otherwise agreed by the parties; it is

FURTHER ORDERED that the motion for preliminary injunction filed by Brian McNamara and Karine Elsen, parents and next friends of Liam McNamara [1051] is GRANTED; it is

FURTHER ORDERED that

1. DCPS shall issue immediately a notice of a placement for Liam McNamara at the Lab School and shall fund this placement prospectively until such time as DCPS issues a notice of change in placement that is in accordance with the procedural protections provided for by the IDEA;

2. DCPS shall fund this placement retroactively to October 31, 2002, 45 days after plaintiffs Brian McNamara and Ka-

rine Elsen filed their administrative due process hearing request on September 16, 2002;

3. DCPS shall conduct a due process hearing to determine the need for special education services for Liam McNamara and the appropriateness of the Lab School placement 10 business days from the date of this Order. The hearing shall be scheduled for no less than six (6) hours unless otherwise agreed by the parties; it is

FURTHER ORDERED that the motion for preliminary injunction filed by Fran and Stuart Kenworthy, parents and next friends of Margaret Kenworthy [1052] is GRANTED; it is

FURTHER ORDERED that

1. DCPS shall issue immediately a notice of a placement for Margaret Kenworthy at the Lab School and shall fund this placement prospectively until such time as DCPS issues a notice of change in placement that is in accordance with the procedural protections provided for by the IDEA;

2. DCPS shall fund this placement retroactively to November 9, 2002, 45 days after plaintiffs Fran and Stuart Kenworthy filed their administrative due process hearing request on September 25, 2002;

3. DCPS shall conduct a due process hearing to determine the need for special education services for Margaret Kenworthy and the appropriateness of the Lab School placement 10 business days from the date of this Order. The hearing shall be scheduled for no less than four (4) hours unless otherwise agreed by the parties; it is

FURTHER ORDERED that the motion for preliminary injunction filed by Clarence Jetter, parent and next friend of Shanice Brooks [1036] is GRANTED; it is

FURTHER ORDERED that

1. DCPS shall issue immediately a notice of a placement for Shanice Brooks at St. Coletta of Greater Washington, Inc. and shall fund this placement prospectively until such time as DCPS issues a notice of change in placement that is in accordance with the procedural protections provided for by the IDEA;

2. DCPS shall conduct a due process hearing to determine the need for special education services for Shanice Brooks and the appropriateness of the St. Coletta of Greater Washington, Inc. placement 10 business days from the date of this Order. The hearing shall be scheduled for no less than four (4) hours unless otherwise agreed by the parties; it is

FURTHER ORDERED that the motion for preliminary injunction filed by Erik deVrijer and Cornelia Lischewski, parents and next friends of Lillian deVrijer [1035] is GRANTED; it is

FURTHER ORDERED that

1. DCPS shall issue immediately a notice of a placement for Lillian deVrijer at the Field School and shall fund this placement prospectively until such time as when DCPS issues a notice of change in placement that is in accordance with the procedural protections provided for by the IDEA;

2. DCPS shall fund this placement retroactively to October 3, 2002 45 days after plaintiffs Erik deVrijer and Cornelia Lischewski filed their administrative due process hearing request on August 19, 2002;

3. DCPS shall conduct a due process hearing to determine the need for special education services for Lillian deVrijer and the appropriateness of the Field School placement 10 business days from the date of this Order. The hearing shall be scheduled for no less than four (4) hours unless otherwise agreed by the parties; it is

FURTHER ORDERED that the motion for preliminary injunction filed by Jon Cooper, parent and next friend of Emily Cooper [1038] is GRANTED; and it is

FURTHER ORDERED that

1. DCPS shall issue immediately a notice of a placement for Emily Cooper at Kingsbury Day School and shall fund this placement prospectively until such time as DCPS issues a notice of change in placement that is in accordance with the procedural protections provided for by the IDEA;

2. DCPS shall fund this placement retroactively to October 18, 2002, 45 days after plaintiff Jon Cooper filed his administrative due process hearing request on September 3, 2002;

3. DCPS shall conduct a due process hearing to determine the need for special education services for Emily Cooper and the appropriateness of the Kingsbury Day School placement 10 business days from the date of this Order. The hearing shall be scheduled for no less than four (4) hours unless otherwise agreed by the parties.

SO ORDERED.

ORDER

For the reasons set forth in a separate Opinion issued this same day, it is hereby

ORDERED that the Motions for an Order to Show Cause [1201, 1202, 1203, 1204, 1205, 1215, 1213, 1217] filed on behalf of the above-captioned plaintiffs are DENIED; and it is

FURTHER ORDERED that the District of Columbia Public Schools ("DCPS") administrative due process hearing officer determinations dismissing with prejudice the claims of the above-captioned plaintiffs are VOID; and that DCPS shall reschedule and conduct administrative due process

hearings requested by these plaintiffs in accordance with the separate Opinion and Order issued this same day.

SO ORDERED.