Joseph KROOT, by and through his next friends and parents, Louis and Kathy KROOT, and Louis and Kathy Kroot, Plaintiffs,

v.

The DISTRICT OF COLUMBIA and Andrew Jenkins, Defendants.

Civ. A. No. 89–2087 SSH.

United States District Court, District of Columbia.

Aug. 25, 1992.

Michael Jeffrey Eig, Matthew BaRry Bogin, Margaret A. Kohn, Bogin & Eig, Washington, D.C., for plaintiffs.

Melvin W. Bolden, Jr., Cecily E. Collier, Rafael Diaz, Office of Corp. Counsel, D.C., Washington, D.C., for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

This action concerns plaintiffs' claim for reimbursement from the District of Columbia for the costs of special education for Joseph Kroot for the 1988–89 school year. Plaintiffs seek to recover those costs pursuant to the Individuals with Disabilities Education Act (IDEA or the Act), 20 U.S.C.A. §§ 1400–1485 (1988).[1] The matter is before the Court on defendants' motion to dismiss or for summary judgment and plaintiffs' motion for summary judgment.

---

1. At the time plaintiff filed this action, the Act was titled the Education of the Handicapped Act. Congress amended the Act and changed its title in 1990. Education of the Handicapped Act Amendments of 1990, Pub.L. No. 101–476, § 901(a)(1), 104 Stat. 1103, 1142 (1990).

For the reasons that follow, the Court denies the parties' motions and remands the case for the hearing officer to conduct a new hearing.

## Background

The IDEA requires the District of Columbia Public Schools (DCPS) to "ha[ve] in effect a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). The DCPS must provide eligible handicapped children with "[a]ccess to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." *Hendrik Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 201, 102 S.Ct. 3034, 3048, 73 L.Ed.2d 690 (1982). With input from a child's parents, the DCPS must develop an individualized education program (IEP) designed to address the child's special educational needs in an appropriate school placement. 20 U.S.C.A. § 1414(a)(5); *see id.* § 1401(a)(18). If no appropriate public school exists, the DCPS must pay the cost of placing the child in an appropriate private school. *School Comm. of the Town of Burlington v. Department of Educ. of Mass.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985).

To qualify for special education under the IDEA, a child must fall within the Act's definition of "handicapped children," which includes "children with specific learning disabilities." *See* 20 U.S.C.A. at 1401(a)(1). In turn, "children with specific learning disabilities" is defined as "those children who have a disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written." *Id.* § 1401(a)(15). To be eligible under the Act, a child must "require special education and related servic-

es" as a result of his or her disability. *Id.* § 1401(a)(1). The Act provides substantive and procedural rights for the parents or guardians of children who meet these definitions. *See id.* § 1415.

Plaintiffs sought special education pursuant to the IDEA for Joseph Kroot's 1988–89 school year.[2] On May 27, 1988, they filed a Confidential Student Services Form with the DCPS.[3] The DCPS then convened a multi-disciplinary team (MDT) to review the request for special education and to collect any information necessary to determine Joseph's eligibility. Plaintiffs submitted numerous documents meant to support their request, including reports from educators at his previous schools and assessments from other evaluators.

The MDT met to discuss the information that plaintiffs submitted and the results of tests that the DCPS conducted. Joseph's mother and Laura Solomon, an educational consultant, attended the MDT's meeting. The MDT determined that Joseph was ineligible for special education under the IDEA. On February 24, 1989, Joseph's parents challenged the ineligibility determination and requested "an impartial due process hearing" under the Act. *See* 20 U.S.C. § 1415(b)(2). A hearing was held on June 6, 1989, and, on June 21, the hearing officer issued a written determination that Joseph was ineligible for special educational services.[4]

Notwithstanding the ineligibility determination, Joseph's parents enrolled him in the Lab School of Washington (LSW), a full-time special education school for learning disabled children. Plaintiffs challenge the hearing officer's determination and seek reimbursement for the costs of Joseph's

---

**2.** These facts, as well as those recited below, are taken from the exhibits to the parties' motions. The parties do not have substantial factual disputes relevant to the Court's disposition of the motions.

**3.** In 1988, Joseph was a five-year-old. He attended pre-kindergarten at McGogney Elementary School during the 1987–88 school year. Joseph's pre-kindergarten teachers and several evaluators indicated that Joseph exhibited weak

fine motor skills, a short attention span, and delayed language development. His parents apparently requested special education services on the basis of those problems.

**4.** Plaintiffs submitted a written request for modification of the hearing officer's report on July 5, 1991. The hearing officer denied the request in a letter dated July 25, 1991.

enrollment at LSW for the 1988–89 term.[5]

*Discussion*

## I. Statute of Limitations

Defendants contend in their motion for summary judgment that plaintiffs' prosecution of their request for special education services for Joseph was untimely in two regards. First, they argue that this action is barred by the seven-month delay between the initial ineligibility determination and plaintiffs' request for a due process hearing. Second, they claim that plaintiffs' complaint was untimely because it was not filed within 30 days of the hearing officer's determination.

■ Defendants waived the limitations defenses by failing to raise them in the answer to the complaint. Defendants first raised the statute of limitations and laches in their July 2, 1990, opposition to plaintiffs' motion for summary judgment—approximately one year after plaintiffs filed the complaint, and there was no request to amend the answer to include such defenses. Affirmative defenses such as the statute of limitations and laches generally must be raised in the answer or they are waived. *See* Fed.R.Civ.P. 8(c); *Johnson v. Sullivan,* 922 F.2d 346, 355 (7th Cir.1990); *Carey Canada, Inc. v. California Union Ins. Co.,* 748 F.Supp. 8, 14 (D.D.C.1990) (quoting 5 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1278, at 477 (1983 & Supp.1990)). Although there are exceptions to the waiver rule, defendants have not suggested that any applies to this case.[6] Indeed, defendants have not filed any response to plaintiffs' assertion of waiver. Accordingly, the Court concludes that defendants waived the limitations and laches defenses.[7]

## II. Challenge to Hearing Officer's Decision

### A. The Court's Inquiry

■ The IDEA permits "any party aggrieved by the findings and decision" of the state administrative hearings to "bring a civil action" in state or federal court without regard to the amount in controversy. 20 U.S.C.A. § 1415(e)(2). Such a civil action may concern "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* § 1415(b)(1)(E). The reviewing court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* at § 1415(e)(2).

The Supreme Court described a reviewing court's role in cases under the IDEA in *Hendrik Hudson Dist. Bd. of Educ. v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The *Rowley* Court stated that:

> a court's inquiry in suits brought under § 1415(e)(2) is two-fold. First, has the State complied with the procedures set forth in the Act? Second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more. *Id.* at 206–07, 102 S.Ct. at 3050–51 (footnotes omitted).

---

5. In a subsequent administrative proceeding, a hearing officer ruled that Joseph was eligible for special education services for the 1989–90 term. The DCPS paid the cost of his enrollment at LSW for that term. Only Joseph's tuition for 1988–89 school year is at issue in this case.

6. One exception to the waiver rule that the Court is obliged to consider *sua sponte* occurs when the limitations period imposes a jurisdictional bar. *See Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 477 (D.C.Cir.1976) (defense

of lack of subject matter jurisdiction cannot be waived). There is no indication, however, that the limitations periods asserted by defendants are jurisdictional under the IDEA.

7. The statute of limitations defense based on the delay between the initial eligibility notification and the request for a hearing was waived for the additional reason that it was not raised at the hearing itself.

This case involves an ineligibility determination, and thus there is no IEP. Therefore, the Court must adapt the second step of the *Rowley* inquiry and inquire whether the ineligibility determination was proper under the Act.

The *Rowley* Court cautioned that "[i]n assuring that the requirements of the Act have been met, courts must be careful to avoid imposing their view of preferable educational methods upon the States." *Id.* at 207, 102 S.Ct. at 3051 (footnote omitted). "[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* at 206, 102 S.Ct. at 3051. Thus, the Court must make an independent determination regarding Joseph's eligibility while affording some deference to the hearing officer's determination.[8]

### B. The Hearing Officer's Determination

At the outset of the hearing, the hearing officer ruled that the DCPS's notice of determination informing plaintiffs of Joseph's ineligibility did not satisfy applicable federal regulations. Because of the deficient notice, the officer concluded that "DCPS should be denied the opportunity to put on its case," and therefore "could not meet its burden of proof." The officer stated that "DCPS has not met its burden of proof that its ineligibility decision was correct … given that DCPS' Notice of Ineligibility as a procedural safeguard was legally deficient." The hearing officer declined to rule on plaintiffs' objections to other items of proof offered by the DCPS—such as the confidential report of

the MDT (MDT report).[9] The hearing officer reasoned that his ruling regarding the notice of determination precluded the DCPS from offering any evidence, and therefore that he need not address plaintiffs' objections to defendant's proffered evidence. Plaintiffs presented two witnesses: Catherine Hostetler, the Director of Occupational Therapy at LSW, and Laura Solomon, the educational consultant who attended the MDT meeting.

The hearing officer concluded that plaintiffs failed to show that Joseph was eligible. He reasoned that, although there was evidence that Joseph had experienced some developmental problems, there was no evidence that he required special education and related services. Thus, Joseph did not satisfy the definition of handicapped under the IDEA.

### C. Procedural Issues

The first step of the Court's review is to determine whether the DCPS complied with the Act's procedural safeguards. *Rowley,* 458 U.S. at 206–07, 102 S.Ct. at 3050–51. That task is complicated by two significant inconsistencies between the hearing officer's determination and his preliminary procedural rulings. First, he allocated the burden of proof at the hearing to plaintiffs. That allocation was inconsistent with his ruling that the DCPS could not meet the burden of proof because he found its notice defective. Second, the officer relied extensively on the contents of the MDT report despite refusing to address plaintiffs' objections to that document.

■ The hearing officer's decision to shift the burden of proof from the DCPS to plaintiffs was incorrect as a matter of both logic and law.[10] Conceivably, parents seek-

---

8. In *Kerkam v. McKenzie,* 862 F.2d 884 (D.C.Cir. 1988), the Court of Appeals noted that the IDEA requires a court to apply a lower standard of deference than conventional administrative review concepts require.

9. Prior to the hearing, the DCPS proffered eighteen documents as evidence, including the confidential report of the MDT. That document contained evaluations of Joseph as well as a summary of the MDT's conclusions and recommendations.

10. The officer explained his logic in a letter responding to plaintiffs' request for modification of his determination. He stated that, in his view, "[t]he burden of proof shifts to the parents once DCPS is found to have not met its burden of proof." That statement reflects a misunderstanding regarding the operation of the burden of proof.

ing to obtain special education services for their child could bear the burden of proving that the child is eligible for such services under the Act. However, the District of Columbia Municipal Regulations provide that the DCPS has the burden of proof at all administrative hearings pursuant to the IDEA. 5 D.C.M.R. § 3022.16.[11] Thus, the hearing officer could not properly shift the burden of proof from the DCPS to plaintiffs.

Plaintiffs contend that, once the hearing officer determined that the DCPS could not meet its burden, he was required to find in their favor on the eligibility issue. The Court does not address that contention, because the hearing officer's ruling on the adequacy of the notice and the resulting exclusion of the DCPS's evidence were in error.

Federal regulations require the DCPS to send written notice to a child's parents before identifying, evaluating, or placing the child under the IDEA. 34 C.F.R. § 300.504. The notice must explain the DCPS's action with regard to the child, the reasons for the action, and the tests or reports that the DCPS considered. *See id.* § 300.505. The DCPS's notice in this case acknowledged that Joseph experienced several weaknesses, including a short attention span and weak motor skills. The notice then set forth the MDT's conclusion that "there is not a severe discrepancy between [Joseph's] achievement and intellectual level of functioning." Lastly, it included a list of recommended actions other than special education and a list of all the tests and reports that the MDT considered. The hearing officer concluded that the notice was too general and that it should have provided a detailed explanation of the MDT's reasoning.

■■■ The regulations governing the contents of the DCPS's notice must be interpreted in the context of the IDEA's procedural protections, particularly the right to a due process hearing. The due process hearing is the Act's primary procedural

protection for parents. The right to a hearing ensures parents an opportunity to challenge the DCPS's decision regarding their child. At the hearing, the DCPS must provide an exhaustive explanation of the reasoning behind its decision. Such an explanation is not necessary in the DCPS's notice of its decision. The purpose of the notice is to provide sufficient information to protect the parents' rights under the Act. It should enable the parents to make an informed decision whether to challenge the DCPS's determination and to prepare for meaningful participation in a due process hearing on their challenge. Applying that standard, the Court concludes that the DCPS's notice was adequate. Accordingly, the hearing officer's decision to preclude the DCPS from presenting evidence at the hearing was in error.

■■■ The second inconsistency in the hearing officer's determination was his reliance on the MDT's confidential report. The hearing officer referred to the report throughout his determination despite his conclusion that he need not address plaintiffs' objections to the report. Although the inconsistency itself may have prejudiced plaintiffs, the hearing officer's reliance on the confidential report was not erroneous. Plaintiffs' objections were without merit.

Plaintiffs argued that Joseph's mother and Laura Solomon should have had an opportunity to add their objections to the MDT report because they attended the meeting. The federal regulations governing the MDT report require that "[e]ach team member shall certify in writing whether the report reflects his or her conclusion. If it does not reflect his or her conclusion, the team member must submit a separate statement presenting his or her conclusion." 34 C.F.R. § 300.543(c). This regulation ensures that the parents will be aware of any dissenting opinions among the MDT team members so that they can address those opinions at a due process hearing. Although Joseph's mother and

---

11. The regulation provides that DCPS "shall bear the burden of proof, based solely upon the evidence and testimony presented at the hear- ing, that the action or proposed placement is adequate to meet the educational needs of the student." 5 D.C.M.R. § 3022.16.

Laura Solomon attended the MDT meeting, they were not team members.[12] Thus, the DCPS was not required to solicit or to accept their written statements for inclusion in the MDT report.

Plaintiffs also raised an objection to an amendment to the MDT report that was made in July 1988. The amendment added interpretations of test results that were inadvertently omitted from the original report. Plaintiffs did not receive the amendment until five days prior to the hearing, but the delayed notice of the amendment did not prejudice plaintiffs' rights under the Act.[13] Five days provided an adequate opportunity to consider the added information before the hearing, and earlier notice would not have furthered any of plaintiffs' rights under the Act.

### D. The Ineligibility Determination

The second step of the Court's inquiry is to determine whether the hearing officer's ineligibility determination was proper under the Act. Pursuant to *Rowley*, the Court must make an independent determination, while giving some deference to the hearing officer's conclusions. *Rowley*, 458 U.S. at 206–07, 102 S.Ct. at 3050–51. However, deference is not possible in this case. The hearing officer's decision to shift the burden of proof to plaintiffs taints his determination. Although his reasoning appears to be consistent with the statute, his conclusion might have been different on the same evidence if he had allocated the burden of proof to the DCPS. Furthermore, plaintiffs might have submitted more evidence if the hearing officer had indicated that he planned to consider the MDT report. Such evidence also might have resulted in a different determination.

To address the substantive issue of Joseph's eligibility, the Court would have to conduct a *de novo* hearing and reach a determination without the benefit of an administrative decision. Mindful of the Supreme Court's admonition that courts should not dictate educational policy, the Court declines to conduct such an inquiry. *See Rowley*, 458 U.S. at 207, 102 S.Ct. at 3051. Instead the Court remands the case to the hearing officer so that he may consider the parties' evidence in light of the correct burden of proof. If further review of his determination is necessary, the Court will have the benefit of the hearing officer's expertise in educational matters and will afford his determination the appropriate level of deference.

### Conclusion

The DCPS's notice of its determination that Joseph was ineligible for special education for the 1988–89 school year was sufficient under the IDEA. Therefore, the hearing officer erred in excluding the DCPS's proposed evidence. It was a further error for the hearing officer to consider the MDT's confidential report after indicating that it was excluded. Finally, it was improper for the hearing officer to shift the burden of proof from the DCPS to plaintiffs. Because of these errors, the Court is unable to review the hearing officer's substantive conclusion that Joseph did not qualify under the IDEA for special education in the 1988–89 school year. Accordingly, the Court remands this case for the hearing officer to conduct a new hearing.

---

12. The regulations provide that the MDT should "includ[e] at least one teacher or other specialist with knowledge in the area of suspected disability." 34 C.F.R. § 300.532(e). Additionally, the MDT must include the child's regular teacher or a teacher qualified to teach students his age and a person qualified to conduct diagnostic examinations of children. *Id.* § 300.540. The regulations do not designate the child's parents as MDT members.

13. *See Hiller v. Board of Educ.*, 743 F.Supp. 958, 970 (N.D.N.Y.1990) (violation of notice requirements that does not prejudice child or parents need not result in conclusion that child had been denied "free appropriate education" under Act), and *Max M. v. Illinois State Bd. of Educ.*, 629 F.Supp. 1504, 1518 (N.D.Ill.1986) (same).