John SCORAH, et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA,**
et al., Defendants.

No. CIV.A.03–160 GK.

United States District Court,
District of Columbia.

June 11, 2004.

Donna Lee Wulkan, Washington, DC, for Plaintiffs.

Urenthea McQuinn, Office of the Corporation Counsel, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiffs, Joseph Scorah, a seventeen-year-old student with emotional disturbances and learning disabilities, and his parents, John and Cecilia Scorah ("the Scorahs"), bring this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, against Defendants, the District of Columbia ("District") and Paul L. Vance, Superintendent, District of Columbia Public

Schools ("DCPS")[1]. The Scorahs challenge a hearing officer's administrative determination that the DCPS met its legal obligations to their child under the IDEA.

This matter is now before the Court on Plaintiffs' Motion for Summary Judgment and Defendants' Cross–Motion for Summary Judgment. Upon consideration of the Motions, Oppositions, and the entire record herein, and for the reasons set forth below, Plaintiffs' Motion for Summary Judgment is **granted** and Defendants' Cross–Motion for Summary Judgment is **denied**.

## I. STATUTORY FRAMEWORK

IDEA guarantees "all children with disabilities" "a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). "Implicit" in the IDEA's guarantee of a free appropriate education "is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." *Bd. of Educ. Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 200, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

As a condition of receiving funds under the Act, IDEA requires school districts to adopt procedures to ensure appropriate educational placement of disabled students. *See* 20 U.S.C. § 1413. In addition, school districts must develop comprehensive plans for meeting the special educational needs of disabled students. *See* 20 U.S.C. § 1414(d)(2)(A). These plans are known as "individualized education programs," or IEPs, and must include "a statement of the child's present levels of educational performance, ... a statement of measurable annual goals, [and] a statement of the special education and related services ... to be provided to the child...." 20 U.S.C. § 1414(d)(1)(A).

IDEA also guarantees parents of disabled children an opportunity to participate in the identification, evaluation, and placement process. *See* 20 U.S.C. §§ 1414(f), 1415(b)(1). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an "impartial due process hearing," 20 U.S.C. §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel." 20 U.S.C. § 1415(h)(1). During the due process hearing, "DCPS shall bear the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the educational needs of the student." 5 D.C. Mun. Regs. § 3022.16.

Parents "aggrieved by" a hearing officer's findings and decision may bring a civil action in either state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2).

## II. BACKGROUND [2]

### A. Joseph's Educational History

Joseph is an emotionally disturbed and learning disabled seventeen-year-old child. In October 1998, Joseph was evaluated for "distractibility and inattention" and began to receive weekly speech and language therapy sessions to address his difficulty

---

1. Plaintiffs are suing Paul L. Vance in his official capacity.

2. The facts contained herein are taken from the parties' Statements of Material Facts Not in Dispute, the Administrative Record ("AR"), or are clearly identified as the allegations of a specific party.

expressing himself verbally. Pl.'s Mot., at 3.

In September 2001, Joseph began the ninth grade at St. John's College High School in Washington D.C.. There Joseph developed an "extreme anxiety" about attending school; "he became depressed, stopped doing his homework, and began to refuse to go to school." *Id.* When Joseph refused to go back to school after Thanksgiving 2001, his parents took him to a psychiatrist who prescribed antidepressant medication which "elevated his moods, and increased his tendency to defy any limits his parents set for him." *Id.*

In December 2001, Joseph "reached his lowest point and became uncontrollable." *Id.* On December 26, 2001, after attempting to stab his brother, he was admitted to Dominion Hospital's Psychiatric Ward where he stayed until January 3, 2002. Upon his release from the Hospital, his parents enrolled him at the Foundation School in Rockville, Maryland, a psychotherapeutic day school. After only three days, Joseph refused to go back. His parents then tried to enroll him at Deal Junior High School, but he refused to go.

On February 20, 2002, Dr. Frank Lane, a clinical psychologist, evaluated and diagnosed Joseph with "moderate depression and occasional irritable exchanges with [his] parents when limits were set on his behavior." *Id.,* at 4. On March 6, 2002, upon Dr. Lane's recommendation, Joseph's parents enrolled him at Alldredge Academy, a residential wilderness program in West Virginia for students with emotional difficulties. According to the Scorahs, Joseph was able to complete his three-month placement at Alldredge only because of the "added support of a definite structure, positive feedback, and connection to his setting." *Id.*

On June 19, 2002, the Scorahs enrolled Joseph at the Lab School of Washington ("Lab") for the summer session. When Joseph refused to go to school, Dr. Meltzer, a high school coordinator at Lab, took a personal interest in his situation. Dr. Meltzer worked with Joseph on an individual basis for more than two weeks and eventually encouraged Joseph to move into a group setting to finish the summer session. With Dr. Meltzer's help, Joseph successfully finished the summer session and was accepted to continue at Lab for the 2002–2003 school year.

In September 2002, Joseph again encountered difficulties and refused to go to school. In order to get Joseph to return, Lab developed an individualized program that responded to his emotional and educational needs.[3] This program included an athletic internship, individual speech and language therapy sessions, psychotherapy, thirty-five hours per week of special education, two forty-five minute psychology sessions per week, supportive teacher counseling, and consultations with academic staff, parents, speech and language pathologists, and high school counselors. *See* Compl., at ¶¶ 24, 25. According to the Scorahs, "[o]nly upon the consistent encouragement and flexible curriculum of the Lab School has Jo[seph] been able to harness his depression, address his learning disabilities, and attend school on a regular basis." Pl.'s Mot., at 6.

**B. DCPS' Determination of Joseph's Eligibility for Special Education**

In March 2002, the Scorahs submitted to DCPS a Teacher Assistance Team ("TAT") form, which gave DCPS 120 days to (1)

---

3. The program Lab developed for Joseph is referred to hereinafter as "Lab's individualized program."

assess Joseph; (2) complete an IEP for him; and (2) identify a school placement. *Id.*, at 7.

On June 20, 2002, DCPS developed an IEP for Joseph. While the IEP provided for extended school year ("ESY") education, it did not identify an ESY placement for either the Summer of 2002 or the 2002–2003 school year.

On July 3, 2002, the Scorahs requested a due process hearing pursuant to the terms of the IDEA based on DCPS' failure to identify an ESY placement.[4]

The due process hearing took place on September 13, 2002. In a decision dated September 16, 2002, the Hearing Officer ordered DCPS to place and fund Joseph at Lab from September 2002 until such time that DCPS "offer[ed] him an appropriate special education placement." *In the Matter of Joseph Scorah,* September 16, 2002 Hearing Officer Decision, Defs. Ex. 5, at 4. The Hearing Officer also ordered DCPS to (1) reimburse the Scorahs for Joseph's ESY education at Lab during the Summer of 2002; (2) convene a Multi–Disciplinary Team ("MDT")/IEP meeting; (3) finalize Joseph's IEP; and (3) identify an ESY placement on or before October 10, 2002. *Id.* In addition, the Hearing Officer ordered the Scorahs to submit any independent evaluation reports they wanted considered at the MDT/IEP meeting. *Id.*

On September 17, 2002, Lab administered an extensive speech and language evaluation which diagnosed Joseph with "Mixed Receptive–Expressive Language Disorder" and recommended that he receive individual speech and language therapy. *See* Pl.'s Mot., Ex. P–22. The Scorahs submitted this independent evaluation

report so that it might be considered at the MDT/IEP meeting.

On October 2, 2002, DCPS convened a MDT/IEP meeting and finalized an IEP for Joseph which placed him at Woodrow Wilson Senior High School ("Wilson"). The IEP also included the speech and language therapy goals recommended in the September 17, 2002 evaluation. Specifically, the IEP provides for 21 hours per week of specialized instruction, 1.5 hours per week of speech and language therapy, and 2 hours of counseling. *See id.*, Ex. P–23.

On October 16, 2002, the Scorahs requested a second due process hearing pursuant to the terms of the IDEA challenging the appropriateness of Joseph's IEP and his placement at Wilson. On December 2, 2002, the Scorahs amended their request to include reimbursement for the September 17, 2002 evaluation that was relied on by DCPS in finalizing Joseph's IEP. *See id.*, Ex. P–29.

The due process hearing took place on December 16, 2002. Mr. Alonzo Randall, Coordinator of Special Education at Wilson, was the only individual to testify on behalf of DCPS.[5] Mr. Randall, who had never met Joseph or reviewed any of the evaluations on Joseph, specifically testified that he was unable to speak personally to Joseph's particular educational or emotional needs and that he did not know whether the goals and objectives provided for in Joseph's IEP were appropriate. AR at 41–42. In a decision dated December 30, 2002, the Hearing Officer concluded that "DCPS has developed an IEP and proposed a placement that is appropriate under the [*Bd. of Educ. Hendrick Hudson*

---

4. As stated *supra,* the Scorahs enrolled Joseph at Lab for the summer session on June 19, 2002 because DCPS had failed to identify a school placement.

5. At the time of the December 16, 2002 hearing, Joseph was enrolled at Lab and had never attended Wilson.

*Central Sch. Dist. v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)] standard." *In the Matter of Joseph Scorah*, December 30, 2002 Hearing Officer Decision, Defs. Ex. 6, at 3–4. The Hearing Officer determined that *Rowley* "made it clear that an appropriate education under IDEA does not require provision of the best possible education, only providing a program designed to provide educational benefit." *Id.*, at 4.

In support of the finding that Joseph's IEP is appropriate, the Hearing Officer cited to the testimony of Ms. Lori Westerland, the Speech Language Clinician at Lab and one of Plaintiffs' witnesses. According to the Hearing Officer, Ms. Westerland "agreed that the IEP contained the written language expressive goals that Joseph needs." *Id.*, at 3. According to the Scorahs, Ms. Westerland testified that she thought the speech and language goals in Joseph's IEP were incomplete and not appropriate for Joseph's defined language disabilities. Ms. Westerland's actual testimony is unavailable because Defendants lost the portion of the administrative hearing audiotapes that contain Ms. Westerland's testimony. In support of the finding that Joseph's placement at Wilson is appropriate, the Hearing Officer cited to testimony from Mr. Randall, the only individual to testify on behalf of DCPS.

The Hearing Officer failed to address whether the Scorahs were entitled to reimbursement for the September 17, 2002 evaluation.

On January 31, 2003, Plaintiffs filed the instant action challenging the Hearing Officer's December 30, 2002 decision. They contend that the Hearing Officer, in finding that DCPS met its burden of proof to establish that Joseph's IEP and placement at Wilson were appropriate, made findings of fact and conclusions of law that were contrary to both the evidence presented at the hearing and the law. They further argue that the Hearing Officer erred in failing to address whether they are entitled to reimbursement for the September 17, 2002 evaluation.

Plaintiffs seek a declaratory judgment that (1) the Hearing Officer's December 30, 2002 decision was inappropriate as a matter of law; (2) Lab's individualized program is appropriate; (3) Lab is an appropriate placement; and (4) DCPS violated Joseph's due process rights. Plaintiffs also seek reimbursement for the expenses they incurred in educating Joseph at Lab since the 2002–2003 school year and for the September 17, 2002 evaluation. In addition, they seek attorneys' fees and costs.

On October 1, 2003, Plaintiffs filed the instant Motion for Summary Judgment and Defendants filed the instant Cross–Motion for Summary Judgment.

## III. STANDARD OF REVIEW

On May 1, 2003, the Court ordered Defendants to file the administrative transcript from Joseph's December 16, 2002 due process hearing by May 15, 2003. *See* May 1, 2003 Minute Entry. On May 19, 2003, the Court granted Defendants' first motion for an extension of time in which to file the administrative transcript, ordering Defendants' production by May 30, 2003. *See* May 19, 2003 Minute Order. On June 2, 2003, the Court granted Defendants' second motion for an extension of time in which to file the administrative transcript, ordering Defendants' production by June 15, 2003. *See* June 2, 2003 Minute Order. That same day, Defendants filed a partial administrative transcript, stating that "the contents of what would constitute the fourth side of the two audiotapes received

for this case is missing." [6]  *See* Docket Entry No. 11. On June 26, 2003, the Court granted Defendants' third motion for an extension of time in which to file the complete administrative transcript, ordering Defendants' production by July 26, 2003.

On June 27, 2003, given Defendants' multiple failures to produce the complete administrative transcript, Plaintiffs filed a motion to compel its production. On August 29, 2003, having received no filings from Defendants, the Court granted Plaintiffs' motion to compel and ordered Defendants to produce the complete administrative transcript by September 17, 2003.[7] *See* Docket Entry No. 17. The Court noted that "Defendants will be given no extensions of time within which to file the labeled administrative record." *Id.* The Court also ordered that

> as relief for the prejudice caused to Plaintiffs by Defendants' failure to timely produce the entire administrative record and as a sanction for losing 25 percent of the administrative hearing audio tapes, when considering Plaintiffs' Motion for Summary Judgment, this Court will consider all evidence in the light most favorable to the Plaintiffs, and [will] make all reasonabl[e] inferences in their favor.

*See id.*

Thus, in light of the Court's August 29, 2003 Order, the traditional summary judgment standard used in ordinary summary judgment cases does not apply in the instant case.

■ In reviewing administrative decisions under the IDEA, courts will review the records of the administrative proceedings, hear additional evidence at the request of a party, and make a decision based on the preponderance of the evidence. *See* 20 U.S.C. § 1415(i)(2)(B).

■ The role of a reviewing court under the IDEA is two-fold. *See Rowley,* 458 U.S. at 206, 102 S.Ct. 3034. First, it must determine whether DCPS has complied with the procedural requirements of the IDEA.[8] *Id.* Second, it must determine whether the "individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." *Id.,* at 207, 102 S.Ct. 3034.

■ The district court's standard of review under the IDEA is less deferential than that applied under the traditional substantial evidence test used in ordinary administrative review cases. *See e.g., Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C.Cir.1988); *Kroot v. D.C.,* 800 F.Supp. 976, 981 (D.D.C.1992). District courts should not, however, "substitute [their] own notions of sound educational policy for those of the school authorities." *Rowley,* 458 U.S. at 206, 102 S.Ct. 3034. Although a district court should make an "independent decision based on a preponderance of evidence," it must also give "due weight to the state administrative proceedings." *Id.,* at 206–07, 102 S.Ct. 3034.

## IV. ANALYSIS

In reaching the following conclusions, the Court notes that, at the December 16, 2002 due process hearing, DCPS presented a total of seven documents. In addi-

6. The missing portion of the administrative transcript contains the testimony of two of Plaintiffs' witnesses: (1) Christopher Lanier, Clinical High School Social Worker at Lab; and (2) Lori Westerland, Speech Language Clinician at Lab.

7. To date, Defendants have failed to produce the complete administrative transcript.

8. Plaintiffs do not challenge the procedural adequacy of the December 16, 2002 hearing.

tion, it presented only one witness, via telephone, for fifteen minutes, who specifically testified that he was unable to speak personally to Joseph's particular needs and that he did not know whether the goals and objectives provided for in Joseph's IEP were appropriate. In contrast, the Scorahs presented thirty-six documents and five witnesses in support of their claim that Lab's individualized program is appropriate and that Lab is an appropriate private school placement for Joseph. The Scorahs also presented evidence that established that Joseph's educational and emotional needs would be harmed if he were moved from Lab.

## A. DCPS Did Not Meet Its Burden of Proving that Joseph's IEP and Placement at Wilson Were Adequate to Meet His Educational and Emotional Needs

As noted *supra*, DCPS had the burden of proof, at the December 16, 2002 due process hearing, to establish that Joseph's IEP and his placement at Wilson were adequate to meet his unique educational and emotional needs. Plaintiffs contend that DCPS did not meet this burden. They further argue that the Hearing Officer's conclusion that DCPS met its burden was based on findings of fact and conclusions of law that were contrary to both the evidence presented at the hearing and applicable law.

For the reasons set forth below, the Court concludes that DCPS failed to meet its burden of proof at the December 16, 2002 hearing and that the Hearing Officer's conclusions to the contrary are not supported by the evidence.

First, the Hearing Officer's conclusion that Joseph's IEP was appropriate is not supported by the evidence presented at the hearing. The Hearing Officer cited to testimony from Ms. Westerland in support

of this finding. According to the Hearing Officer, Ms. Westerland "agreed that the IEP contained the written language expressive goals that Joseph needs." *In the Matter of Joseph Scorah,* December 30, 2002 Hearing Officer Decision, Defs. Ex. 6, at 3. According to Plaintiffs, Ms. Westerland testified that she thought the speech and language goals in Joseph's IEP were incomplete and not appropriate for Joseph's defined language disabilities. Ms. Westerland's actual testimony is unavailable because Defendants lost the portion of the administrative hearing audiotapes that contain Ms. Westerland's testimony. It is clear from this record, including the negative inferences which may be drawn pursuant to Docket Entry No. 17, that the testimony of Ms. Westerland is insufficient to establish the appropriateness of Joseph's IEP. Moreover, Defendants have not provided any evidence in the due process hearing or in their Opposition brief suggesting that Joseph's IEP was appropriate for Joseph's other educational and emotional needs. Neither did the Hearing Officer make any specific findings that the IEP was appropriate. Accordingly, the Hearing Officer's conclusion that Joseph's IEP was appropriate is not supported by the evidence presented at the hearing.

Second, the Hearing Officer's conclusion that Joseph's placement at Wilson was appropriate is not supported by the evidence presented at the hearing. The Hearing Officer cited to Mr. Randall's testimony in support of this finding. Mr. Randall, however, had never met Joseph or reviewed any of his evaluations. Indeed, Mr. Randall specifically testified that he was unable to speak personally to Joseph's particular needs and that he did not know whether the goals and objectives provided for in Joseph's IEP were appropriate. AR at 41–42. It is clear from this record that the testimony of Mr. Randall is insufficient

to establish the appropriateness of Joseph's placement at Wilson.

For the foregoing reasons, DCPS failed to meet its burden of proving that Joseph's IEP and his placement at Wilson were appropriate to meet his educational and emotional needs.

### B. Lab's Individualized Program Is Appropriate and Lab Is an Appropriate Private School Placement

■ Plaintiffs claim that the individualized program developed by Lab is appropriate. Defendants have not provided any evidence in the due process hearing or in their Opposition brief suggesting that the Lab program is in any way inappropriate or that Joseph is not benefitting from it. Neither did the Hearing Officer make any specific findings that Joseph's placement at Lab was inappropriate.

Plaintiffs also claim that Lab is an appropriate private school placement for Joseph. "Where a public school system has defaulted on its obligations under the IDEA, a private school placement is 'proper under the Act' if the education by said school is 'reasonably calculated to enable the child to receive educational benefits.'" *Blackman v. D.C.*, 278 F.Supp.2d 1, 4 (D.D.C.2003) (quoting *Rowley*, 458 U.S. at 207, 102 S.Ct. 3034). For the reasons stated *supra*, it is clear that Joseph's IEP and placement at Wilson were inappropriate, and that the public school system "defaulted" on its obligations under the IDEA. In addition, Defendants have not provided any evidence in the due process hearing or in their Opposition brief suggesting that Lab is in any way inappropriate or that Joseph is not benefitting from that placement. Neither did the Hearing Officer make any specific findings that the Lab placement was not appropriate.

### C. DCPS Must Reimburse Plaintiffs for the Expenses They Incurred in Educating Joseph at Lab

■ The Supreme Court has concluded that courts reviewing an IDEA due process hearing decision may order school authorities to reimburse parents for their expenditures on private special education if (1) the student's public school IEP was inappropriate, thereby denying the child the FAPE required by the IDEA; and (2) the private placement desired by the parents is proper. *See School Committee of the Town of Burlington, Mass. v. Dep't of Education*, 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); *Florence County School District Four v. Carter*, 510 U.S. 7, 10–11, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).

In so doing, the Supreme Court explicitly held that reviewing courts may reimburse parents, such as the Scorahs, "who unilaterally change their child's placement during the pendency of review proceedings." *Burlington*, 471 U.S. at 374, 105 S.Ct. 1996. It reasoned that

the review process is ponderous. A final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed. In the meantime, the parents who disagree with the proposed IEP are faced with a choice: go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement. If they choose the latter course, which conscientious parents who have adequate means and who are reasonably confident of their assessment normally would, it would be an empty victory to have a court tell them several years after that they were right but that these expenditures could not in a proper case be reimbursed by the school officials. If

that were the case, the child's right to a *free* appropriate public education, the parents' right to participate fully in developing a proper IEP, and all of the procedural safeguards would be less than complete.

*Id.* at 370 (emphasis in original).

First, for the reasons explained *supra,* it is clear that Joseph's IEP and his placement at Wilson were not appropriate, and that he was therefore denied a FAPE. Second, Defendants have not provided any evidence in the due process hearing or in their Opposition brief suggesting that Joseph's placement at Lab is inappropriate or that he is not benefitting from that placement. Neither did the Hearing Officer make any specific findings that the Lab placement was not appropriate.

In sum, the Court concludes both that DCPS has failed to provide Joseph an appropriate IEP and that Lab is an appropriate private school placement for him. Accordingly, pursuant to the Supreme Court's rulings in *Burlington* and *Carter,* DCPS must reimburse Plaintiffs for the expenses they incurred, beginning in the 2002–2003 school year, in educating Joseph at Lab.

### D. Plaintiffs Are Entitled to Reimbursement for the September 17, 2002 Evaluation

█ Plaintiffs claim that they are entitled to reimbursement for the September 17, 2002 evaluation that was relied upon by DCPS in finalizing Joseph's IEP. Defendants contend only that Plaintiffs are not entitled to reimbursement because they failed to raise this issue during the December 16, 2002 hearing.

Defendants' argument is without merit because the record shows clearly that Ms. Donna Wulkan, Plaintiffs' counsel, specifically requested reimbursement, stating "we're asking for reimbursement for that

Lab School speech and language evaluation, because it had to be done because DCPS conducted an inadequate screening, and then afterwards they did in fact adopt the Lab School evaluation and relied on it, but they developed their own goals and objectives." AR at 29. Plaintiffs also raised the issue of reimbursement for the September 17, 2002 evaluation in their amended request for a due process hearing on December 2, 2002. *See* Pls.' Mot., Ex. P–29. Accordingly, Plaintiffs are entitled to reimbursement for the September 17, 2002 evaluation.

### E. DCPS Violated Joseph's Due Process Rights

█ Plaintiffs claim that Defendants failed to provide Joseph "due process" because they failed to follow their own procedures as established in the District of Columbia Municipal Regulations, *see* 5 D.C. Mun. Regs. § 3030.1. Section 3030.1 of the D.C. Municipal Regulations states that "[a]n impartial hearing officer shall conduct a due process hearing and issue a written decision not later than forty[-]five days after the receipt of the request for a hearing . . . ." 5 D.C. Mun. Regs. § 3030.1. Defendants offer nothing that undercuts or contradicts Plaintiffs' claim that they are entitled to a hearing and a final decision within forty-five days from the date of receipt of the request for a hearing. They have, therefore, failed to carry their burden of showing that they are entitled to summary judgment. Accordingly, the Court finds that Joseph was entitled to a hearing and a final decision within forty-five days from the date of receipt of the request for a hearing.

On October 16, 2002, Plaintiffs requested a due process hearing. On November 19, 2002, they contacted DCPS again because they had not received a hearing date. The due process hearing was finally

held on December 2, 2002, forty-seven days after Plaintiffs' initial request. The Hearing Officer issued a final decision on December 30, 2002, seventy-five days after Plaintiffs' initial request. Accordingly, the Court finds that Defendants have failed to provide Joseph the process that was due.

### F. Plaintiffs Are Entitled to Reasonable Attorney's Fees Under § 1415(i)(3)(B) of the IDEA

■ Plaintiffs seek reasonable attorney's fees and costs. Section 1415(i)(3)(B) of the IDEA gives courts the authority to "award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). *See Moore v. D.C.*, 907 F.2d 165 (D.C.Cir.1990) (en banc) (holding that IDEA authorizes a parent who prevails in an IDEA administrative hearing to recover attorney's fees). "A party prevails when it obtains a direct benefit that materially alters the legal relationship between the parties." *Smith v. Roher*, 954 F.Supp. 359, 363 (D.D.C.1997). Plaintiffs have prevailed in the instant Motion for Summary Judgment. As such, they are entitled to an award of "reasonable attorneys' fees" under the statute.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is **granted** and Defendants' Cross–Motion for Summary Judgment is **denied.**

An Order will issue with this Opinion.

### ORDER

Plaintiffs, Joseph Scorah, a seventeen-year-old student with emotional disturbances and learning disabilities, and his parents, John and Cecilia Scorah ("the Scorahs"), bring this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, against Defendants, the District of Columbia ("District") and Paul L. Vance, Superintendent, District of Columbia Public Schools ("DCPS")[1]. The Scorahs challenge a hearing officer's administrative determination that the DCPS met its legal obligations to their child under the IDEA.

This matter is now before the Court on Plaintiffs' Motion for Summary Judgment and Defendants' Cross–Motion for Summary Judgment. Upon consideration of the Motions, Oppositions, and the entire record herein, and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiffs' Motion for Summary Judgment [# 20] is **granted** and Defendants' Cross–Motion for Summary Judgment [# 19] is **denied**; it is further

**ORDERED and DECLARED** that (1) Joseph Scorah was denied a free appropriate public education; (2) Joseph Scorah's individualized education program, or IEP, was inappropriate and his placement at Woodrow Wilson Senior High School was inappropriate; (3) the Lab School of Washington's individualized program is appropriate; (4) the Lab School of Washington is an appropriate private school placement for Joseph Scorah; and (5) DCPS violated Joseph Scorah's due process rights; it is further

**ORDERED** that DCPS shall reimburse Plaintiffs for the expenses they incurred in educating Joseph Scorah at the Lab School of Washington since the 2002–2003 school year; it is further

**ORDERED** that Joseph Scorah shall remain enrolled in the Lab School of Washington, at no cost to Plaintiffs; it is further

---

1. Plaintiffs are suing Paul L. Vance in his official capacity.

**ORDERED** that DCPS shall reimburse Plaintiffs for the September 17, 2002 evaluation; it is further

**ORDERED** that Plaintiffs shall, by **July 15, 2004**, submit to the Court a detailed request for all attorneys' fees and costs incurred in bringing this suit.